STATE of Tennessee, Appellant,

v.

John Noel HUDSON, Appellee.

Supreme Court of Tennessee,
at Jackson.

Feb. 22, 1993.

Charles W. Burson, Atty. Gen. and Reporter, Joel W. Perry, Asst. Atty. Gen., Nashville, for appellant.

Bill Anderson, Jr., Memphis, for appellee.

## OPINION

DAUGHTREY, Justice.

We granted the state's application for permission to appeal in this case in order to review the validity of a search warrant issued by a federal magistrate and executed in compliance with federal law, but not in compliance with state law. Specifically, the warrant was executed six days after it was issued, beyond the five-day limit provided both in Rule 41(d) of the Tennessee Rules of Criminal Procedure and in T.C.A. § 40–6–107. The parallel federal rule, Fed. R.Crim.P. 41, permits up to ten days for valid execution, and the federal magistrate who issued the warrant in this case set a one-week limit for execution.

There was no evidentiary hearing on the defendant's motion to suppress the evidence seized pursuant to the warrant, although the attorneys for both prosecution and defense did present argument. Following argument, the state trial judge held that the warrant was invalid under state law, despite his assumption that "the officers [who secured the warrant] were acting in good faith." The trial judge was also willing to assume that, at the time of the search, the officers who executed the warrant did not know whether the resulting prosecution would be brought in state or

federal court and that they "shouldn't be put in a position of having to look ahead to see where it's going to be prosecuted." Nevertheless, the trial judge was concerned that permitting the warrant to be tested exclusively by federal law would not only violate the letter of state law, but would also invite improper circumvention of that law and result in subterfuge with regard to the issuance of search warrants in Tennessee. As a result, the trial judge ruled that the evidence could not be introduced in state court, even though it might be admissible in a federal prosecution.

The problem with the trial court's decision is that it treats the question solely as one of law, when, in reality, the dispositive issue in this case is one of fact. Moreover, because the matter cannot be decided without a developed record, the case must be remanded to the trial court for an evidentiary hearing, pursuant to the principles discussed below.

■ In the recent case of *Dillon v. State*, 844 S.W.2d 139 (Tenn.1992), we were asked by the defendant to apply the Tennessee state constitutional rule announced in *State v. Jacumin*, 778 S.W.2d 430 (Tenn. 1989), to suppress a .22 caliber pistol seized by federal agents from a safety deposit box in Sarasota, Florida. The search was carried out pursuant to a warrant issued by a federal magistrate in Florida that Dillon challenged for lack of probable cause.

The probable cause standard set out in *Jacumin* is based on Article I, Section 7 of the Tennessee Constitution and, as it turns out, is narrower than the federal standard announced in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Because *Jacumin* holds that the state constitution affords a Tennessee defendant more protection against unreasonable searches and seizures than does the Fourth Amendment to the United States Constitution, Dillon argued that evidence introduced in a Tennessee courtroom must meet the state constitutional standard for admissibility. The trial court agreed with the defendant's contention and found the Florida search warrant invalid under Tennessee law because there was an insufficient nex-

us between the weapon and the lock box. As a result, the trial judge suppressed the evidence seized by federal agents pursuant to that warrant. The Court of Criminal Appeals also applied Tennessee law to the facts, but found a logical connection between the search for the gun and the opening of the lock box and, therefore, reversed the suppression order.

On appeal, we remanded the case for reconsideration in light of the analysis utilized in *State v. Mollica*, 114 N.J. 329, 554 A.2d 1315 (1989), in which the New Jersey Supreme Court deftly synthesized existing state and federal authority on the question of the applicability of the law of one jurisdiction to the conduct of law enforcement officers of another jurisdiction. Based on a *Mollica*-type analysis, we held that under the facts in *Dillon*, the search warrant need only satisfy federal law. *Dillon* at 144.

In reaching that result, we quoted extensively from *Mollica* and its analysis of the so-called "silver platter" doctrine. The *Mollica* court began its exegesis by noting that "[w]ith regard to law enforcement activities, a state constitution ordinarily governs only the conduct of the state's own agents or others acting under color of state law." *State v. Mollica, supra,* 554 A.2d at 1324. This rule had its genesis in federal law:

> For many years, federal standards for lawful searches and seizures were usually more protective than the standards followed by the several states. This disparity required federal courts to evaluate the etiology of evidence that was turned over to federal officers for federal prosecutorial use after having been seized by state officers. Such an inquiry was necessary to determine whether the state officers, who had obtained the evidence in accordance with state standards less protective than federal mandates, had acted *wholly independently* of federal officers. Because [at that time] state officers were not subject to the fourth amendment and its remedial exclusionary rule, it was recognized that any evidence that was *independently obtained* by

state officials could be "turned over to federal authorities on a silver platter." Such evidence could then be used by federal agents provided they had not violated federal-constitutional standards by participating in the initial seizure.

The essential principle underlying the development of this "silver platter" doctrine is that protections afforded by the constitution of a sovereign entity control the actions only of the agents of that sovereign entity.

*Mollica* at 1324 (citations omitted; emphasis added).

Noting that "[t]his principle explains why the conduct of ordinary citizens acting only in their capacity as private individuals will not trigger the constitutional protections that would otherwise apply if the identical acts were undertaken by government agents exercising governmental authority," *id.* at 1324–25, the *Mollica* court also pointed out that "[t]his treatment of officers of another jurisdiction with respect to the admissibility of evidence seized by such officers is analogous to the treatment accorded the officers of a foreign country, who, in the exercise of their own government's authority, are not subject to the federal constitution." *Id.* at 1325 (citations omitted). The "critical element" in all these situations is, as the *Mollica* court noted, "the agency *vel non* between the officers of the forum state who seek to use the evidence and the officers of the state who obtained the evidence." *Id.* at 1326. Accordingly, "[i]t is this element—the presence or absence of agency between the officers of the two sovereigns—that determines the applicability of the constitutional standards of the forum jurisdiction." *Id.*

The court in *Mollica* noted with some irony that the "era of constitutional homogeneity" ushered in by *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949) (extending Fourth Amendment search-and-seizure standards to the states), and *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (extending the exclusionary rule to the states), has now "faded," as state courts have erected state constitutional standards that are "more

protective than the minimum standards derived from the fourth amendment." *Mollica*, 554 A.2d at 1326. As a result, "[i]nstead of evidence being transferred to federal officers from state officers working under more lenient local standards, evidence might now flow to state officers from federal officers governed by more lenient standards." *Id.* at 1326–27. Regardless of which direction the transfer takes, however, "[t]he nature of the relationship between the officers participating in the search or seizure and the officers seeking to make use of such evidence is critical." *Id.* at 1327.

For the *Mollica* court, the "key element" in this inquiry is the existence of "intergovernmental agency":

An important aspect of this determination is whether for constitutional purposes the federal agents can be said to be acting under the "color of state law." The assessment of the agency issue necessarily requires an examination of the entire relationship between the two sets of government actors no matter how obvious or obscure, plain or subtle, brief or prolonged their interactions may be. The reasons and the motives for making any search must be examined as well as the actions taken by the respective officers and the process used to find, select, and seize the evidence. . . .

Differing relationships and interactions may suffice to establish agency. Thus, antecedent mutual planning, joint operations, cooperative investigations, or mutual assistance between federal and state officers may sufficiently establish agency and serve to bring the conduct of the federal agents under the color of state law. On the other hand, mere contact, awareness of ongoing investigations, or the exchange of information may not transmute the relationship into one of agency.

*Mollica* at 1329 (citations omitted).

In *Dillon*, the factual record was sufficient to permit the conclusion that federal agents in Florida were acting wholly independently when they secured a warrant for Dillon's lock box and seized evidence later

introduced at his trial in Tennessee. We therefore held that the validity of the warrant was appropriately tested by the federal constitutional standard of *Gates v. Illinois*, rather than the narrower state constitutional standard of *Jacumin*. In this case, the question is one of procedural rules, rather than constitutional authority, although the time limitation placed on the execution of search warrants is clearly rooted in a concern for the continued existence of probable cause to support the warrant and thus has constitutional underpinnings. The precise question is whether state or federal law should be applied to determine the validity of a warrant issued by a federal magistrate that was executed one day too late under state law, but one day before it expired by its own terms and within the ten-day limit set by federal law. The answer to this question does not turn, as a matter of law, on the forum in which the evidence is proffered. Instead, it turns, as a factual matter, on the relationship between the federal and state officers involved in this case and whether those officers were acting under "color of state law."

Such a determination cannot be made on the basis of the record now before us. Although it reveals that the search warrant was secured by a federal officer (Bartley H. McEntire, a special agent with the federal Bureau of Alcohol, Tobacco and Firearms), the record does not indicate who actually executed the warrant and under what circumstances. Moreover, the indictment lists three state officers as witnesses (J.R. Setliff, S. Chambers, and P. Drewery of "metro narcotics"), but the record does not show what participation, if any, they had in the investigation, what role they played in securing and executing the warrant, or what relationship they had to ATF Agent McEntire.

█ It follows that this case must be remanded to the trial court for an evidentiary hearing to determine the facts surrounding the search and seizure that resulted in the defendant's arrest and indictment. The trial court's determination of the validity of the warrant as a basis for

prosecution will be guided by the standards set out in this opinion. If the warrant was secured and executed by federal agents acting "wholly independently" of state officers, then the ten-day federal limitation is applicable, the validity of the warrant must be sustained, and the case may proceed to trial. If, on the other hand, federal agents were acting in conjunction with state officers, or if there is other evidence of "intergovernmental agency," the five-day state limitation applies, the order granting suppression must stand, and the indictment will be subject to dismissal on the merits.

The case is remanded to the trial court for further proceedings consistent with this opinion.

REID, C.J., and DROWOTA, O'BRIEN and ANDERSON, JJ., concur.