# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

FOR PUBLICATION

| | | |
|---|---|---|
| EVELENE N. STEIN, | ) | **Filed: May 19, 1997** |
| | ) | |
| Plaintiff/Appellant | ) | Hon. Hamilton V. Gayden |
| | ) | Judge |
| Vs. | ) | |
| | ) | DAVIDSON COUNTY |
| DAVIDSON HOTEL COMPANY, | ) | |
| | ) | Supreme Court |
| Defendant/Appellee. | ) | No. 01-S01-9610-CV-00202 |
| | ) | |

# FILED

**May 19, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

FOR PLAINTIFF/APPELLANT
Patricia A. Montgomery
WESTLAKE & MARSDEN, P.C.
Nashville, Tennessee

FOR DEFENDANT/APPELLEE:
John S. Hicks,
Stephen H. Biller
Katherine A. Brown
BAKER, DONELSON, BEARMAN &
CALDWELL
Nashville, Tennessee

# O P I N I O N

TRIAL COURT AND
COURT OF APPEALS
AFFIRMED.                                                    DROWOTA, J.

The plaintiff, Evelene N. Stein, a private employee, was terminated from

her position of banquet captain at the Holiday Inn Crown Plaza which is owned by defendant, Davidson Hotel Company,[1] a private employer, because she tested positive on a random drug test. Stein brought suit against Davidson alleging seven grounds for relief. Davidson filed a motion to dismiss for failure to state a claim and the trial court granted the motion with respect to five of the seven claims alleged by Stein. The Court of Appeals affirmed the trial court's judgment.

We granted this appeal to determine whether Stein has stated a cause of action for wrongful discharge. We conclude that no clear mandate of public policy is violated when a private employer dismisses a terminable-at-will employee who tests positive on a random drug test. Therefore, we affirm the judgment of the Court of Appeals upholding the trial court's dismissal of Stein's claim for wrongful discharge.[2]

## BACKGROUND

Stein began working at the Holiday Inn Crowne Plaza on June 6, 1989, when it was owned by Flautt Properties, Inc. Stein had no written contract and was a terminable-at-will employee. In September of 1990, Flautt sold the hotel to Davidson. Stein continued to work at the hotel after the sale. In February of 1992, Davidson instituted a drug and alcohol testing program. The program included pre-employment testing, reasonable suspicion testing, after accident testing, and random drug testing. Prior to instituting the program, Davidson

---

[1]Hereinafter "Davidson."

[2]Oral arguments were heard in this case on April 8, 1997, in Union City, Obion County, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

required all employees to sign a consent and release form. According to Stein's allegations, any employee refusing to sign the consent and release form would have been terminated. Stein does not contend that she refused to sign the consent form, but she alleges that she signed the form only because of the perceived threat of termination.

In October of 1994, Davidson advised Stein, who was employed in the position of banquet captain, that she had been selected for a random drug test. Stein went to Roche Biomedical Laboratories, Inc. and provided a sample for urinalysis. Joe Dietz, Stein's immediate supervisor, thereafter informed her that she had tested positive for drug use, but she was not advised of the drugs detected or any other information about the positive result. Later that day, Stein met with other Davidson managers. She denied using illegal drugs and asked that she be given an opportunity to refute and disprove the positive test result. Stein wanted to employ another laboratory to test a different urine sample. Davidson declined to approve Stein's suggestion, but instead offered to have Roche re-test Stein's original urine sample. Stein refused that offer. Thereafter, Davidson terminated Stein's employment as a result of the positive drug test.

On January 9, 1995, Stein filed this action against Davidson. Her complaint alleged several causes of action including: (1) wrongful discharge in violation of public policy; (2) tortious invasion of privacy; (3) breach of an implied employment contract; (4) breach of an implied covenant of good faith and fair dealing; (5) negligence on the part of Davidson; (6) negligent infliction of emotional distress and outrageous conduct; and (7) failure to pay Stein earned vacation time. On

March 7, 1995, Davidson filed a "Motion to Dismiss or for Summary Judgment."

The trial court granted Davidson's motion to dismiss for failure to state a claim as

to counts one, two, three, five, and six on June 9, 1995.  With respect to the fourth

claim, the trial court took the matter under advisement, and with respect to count

seven, the trial court, after reviewing affidavits submitted by the parties, concluded

that there was a genuine issue of material fact  and denied the motion for

summary judgment.  The trial court concluded, pursuant to Rule 54.02, Tenn. R.

Civ. P., that there were no just reasons for delay, and certified that the order was

final for purposes of appeal.

Stein appealed the trial court's dismissal of her wrongful discharge and

tortious invasion of privacy claims.  The Court of Appeals affirmed the trial court's

dismissal of both claims.  Thereafter, we granted this appeal to consider whether

Stein has stated a cause of action for wrongful discharge.  In resolving this

question, we must determine whether dismissal of a terminable-at-will employee

for testing positive on a random drug test violates a clear mandate of public policy.

**STANDARD OF REVIEW**

A Rule 12.02(6), Tenn. R. Civ. P., motion to dismiss for failure to state a

claim upon which relief can be granted tests only the legal sufficiency of the

complaint, not the strength of a plaintiff's proof.  Such a motion admits the truth of

all relevant and material averments contained in the complaint, but asserts that

such facts do not constitute a cause of action.  In considering a motion to dismiss,

courts should construe the complaint liberally in favor of the plaintiff, taking all

-4-

allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. Cook v. Spinnakers of Rivergate, Inc., 878 S.W.2d 934, 938 (Tenn. 1994). In considering this appeal from the trial court's grant of the defendant's motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions de novo with no presumption of correctness. Tenn. R. App. P. 13(d); Owens v. Truckstops of America, 915 S.W.2d 420, 424 (Tenn. 1996); Cook, supra.

## RETALIATORY OR WRONGFUL DISCHARGE

The doctrine of employment-at-will is a long standing rule in this State which recognizes the concomitant right of either the employer or the employee to terminate the employment relationship at any time, for good cause, bad cause, or no cause at all, without being guilty of a legal wrong. Harney v. Meadowbrook Nursing Center, 784 S.W.2d 921, 922 (Tenn. 1990); Watson v. Cleveland Chair Co., 789 S.W.2d 538 (Tenn. 1989). Both by statute and case law in this and other states, however, some restrictions have been imposed upon the right of an employer to terminate an at-will employee. In Tennessee an employee-at-will generally may not be discharged for attempting to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy which is evidenced by an unambiguous constitutional, statutory, or regulatory provision. See e.g., Mason v. Seaton, ___ S.W.2d ___ (Tenn. 1997); Conatser v. Clarksville Coca-Cola, 920 S.W.2d 646 (Tenn. 1995); Reynolds v. Ozark Motor Lines, Inc., 887 S.W.2d 822 (Tenn. 1994); Anderson v. Standard Register Co.,

857 S.W.2d 555 (Tenn. 1993); Hodges v. S.C. Toof & Co., 833 S.W.2d 896 (Tenn. 1992); Chism v. Mid-South Milling Co., 762 S.W.2d 552 (Tenn. 1988); Clanton v. Cain-Sloan Co., 677 S.W.2d 441 (Tenn. 1984).

This cause of action for retaliatory or wrongful discharge, which was first recognized by this Court in Clanton, supra, strikes the balance between the employment-at-will doctrine and rights granted employees under well-defined expressions of public policy. Anderson, 857 S.W.2d at 556. The employment-at-will doctrine recognizes that employers need freedom to make their own business judgments without interference from the courts. Mason, ___ S.W.2d at ___ "[A]n employer's ability to make and act upon independent assessments of an employee's abilities and job performance as well as business needs is essential to the free-enterprise system." Clifford v. Cactus Drilling Corp., 353 N.W.2d 469, 474 (Mich. 1984). In contrast, the action for retaliatory or wrongful discharge recognizes that, in limited circumstances,[3] certain well-defined, unambiguous principles of public policy confer upon employees implicit rights which must not be circumscribed or chilled by the potential of termination. See Chism v. Mid-South Milling Co, 762 S.W.2d 552, 555-57 (Tenn. 1988)(citing examples). Therefore, the tort action of retaliatory or wrongful discharge is available to employees discharged as a consequence of an employer's violation of a clearly expressed public policy. Reynolds, 887 S.W.2d at 823; Hodges, 833 S.W.2d at 899.

This Court has explained its role with respect to discerning public policy as

_____

[3]To maintain this delicate balance, this Court has emphasized that the exception to the employment-at-will doctrine must be narrowly applied and not be permitted to consume the general rule. Chism, 762 S.W.2d at 556.

follows:

> This Court can know nothing of public policy except from the constitution and the laws, and the course of administration and decision. It has no legislative powers. It cannot amend or modify any legislative acts. It cannot examine questions as expedient or inexpedient, or as politic or impolitic. Considerations of that sort must, in general, be addressed to the legislature. Questions of policy determined there are concluded here.
>
> There are cases, it is true, in which arguments drawn from public policy must have large influence; but these are cases in which the course of legislation and administration do not leave any doubt upon the question what public policy is, and in which what would otherwise be obscure or of doubtful interpretation, may be cleared and resolved by reference to what is already received and established.

Watson, 789 S.W.2d at 540, (quoting Nashville Ry. & Light Co. v. Lawson, 144 Tenn. 78, 91, 229 S.W. 741 (1920). This Court does not engage in hypothetical guessing to fashion public policy. Unlike other jurisdictions,[4] Tennessee courts do not, in the context of wrongful discharge actions, attempt to discern public policy from the common law. See e.g., Reynolds, 887 S.W.2d at 823. Therefore, to prevail in this appeal, Stein must point to a clear mandate of public policy,[5] evidenced by an unambiguous constitutional, statutory, or regulatory provision, which Davidson violated when it discharged her for testing positive on a random drug test. Id.

Stein argues that Davidson's dismissal of her contravenes her right to

---

[4]See e.g. Hennessy v. Coastal Eagle Point Oil Co., 609 A.2d 11, 17-19 (N.J. 1992).

[5]Though we have examined and studied authority from other states, to prevail on her claim, Stein must point to a clearly defined Tennessee public policy which was violated by her dismissal.

privacy evidenced by Article I, Sections 7 and 8 of the Tennessee Constitution. In support of her claim, Stein also relies upon decisions[6] of the United States Supreme Court which address random drug testing of government employees, and statutes[7] from other states relating to random drug testing of private employees. Davidson responds that constitutional provisions protect citizens from abusive and intrusive government action but do not control relationships between private individuals, including employer - employee relationships. Secondly, Davidson argues that, in Tennessee, there is no well-defined public policy evidenced by an unambiguous constitutional, statutory, or regulatory provision which precludes employers from dismissing at-will employees who test positive for drug usage on a random drug test.

Initially, we address Stein's contention that the constitutional right of privacy represents a clear public policy which prohibits a private employer from terminating employees who test positive for drug use. It is well-settled that constitutional guarantees restrain government conduct and generally do not restrain the conduct of private individuals. State v. Hudson, 849 S.W.2d 309, 311 (Tenn. 1993); Freshwater v. State, 2 Tenn. Crim. App. 314, 320, 453 S.W.2d 446, 449 (1969); see also, Borse v. Peace Goods Shop, Inc., 963 F.2d 611, 620 (3d Cir. 1992); Gilmore v. Enogex, Inc., 878 P.2d 360, 365 (Ok. 1994); Roe v. Quality Transportation Services, 838 P.2d 128, 130 (Wash. App. Div. 3 1992); but see Luck v. Southern Pac. Trans. Co., 267 Cal. Rptr. 618, 627 (1990) (ballot

---

[6]See e.g. National Treasury Employees Union v. Von Raab, 489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989); Skinner v. Railway Labor Executive's Association, 489 U.S. 602, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).

[7] See e.g. Conn. Gen. Stat. § 31-51t to -51aa (1992); Iowa Code Ann. § 730.5 (West 1993).

arguments showed that constitutional provision applied to both business and governmental activities). Contrary to Stein's claim, therefore, the state constitutional guarantee of privacy is not a source of public policy which restricts the right of private employers to discharge terminable-at-will employees who test positive on random drug tests. The United States Supreme Court decisions upon which Stein relies are not applicable to this appeal. Those decisions involved random drug testing of public employees by government actors; therefore, constitutional principles of privacy and search and seizure were implicated. Since this appeal involves a private employer/employee relationship, those important constitutional considerations are not at issue.

Moreover, we have not discovered a statutory or regulatory provision which represents a well-defined public policy that is contravened by employers discharging at-will employees who test positive for drug use on random drug tests. There is certainly no statutory provision expressly prohibiting an employer from discharging an employee who has tested positive on a random drug test. Unlike some other state statutes upon which Stein relies, Tennessee has not enacted a comprehensive statutory scheme to govern random drug testing by private employers. As the Court of Appeals recognized, existing Tennessee statutes which relate to random drug testing in other contexts appear to favor the practice. The Legislature has specifically authorized drug testing for public high school students and the security personnel employed by the Department of Corrections and Youth Development. Tenn. Code Ann. § 49-6-4213 (1996); Tenn Code Ann. § 41-1-122 (1990 & Supp. 1996). Moreover, in 1995, the General Assembly enacted a statute which provides that private sector employees who left their most

recent job "either to avoid taking a drug or alcohol screening test, or after receiving a positive result to a drug or alcohol screening test" are not entitled to unemployment compensation. Tenn. Code Ann. § 50-7-302(a)(9) (Supp. 1996). Though not directly addressing random drug testing of private employees, the most straightforward expression of public policy with respect to dismissing employees for drug use was contained within a statute enacted on May 13, 1996, following the release of the Court of Appeals' decision in this case. In that statute the General Assembly declared:

> It is the intent of the General Assembly to promote drug-free workplaces in order that employers in the state be afforded the opportunity to maximize their levels of productivity, enhance their competitive positions in the market place and reach their desired levels of success without experiencing the costs, delays and tragedies associated with work-related accidents resulting from drug abuse by employees. It is further the intent of the General Assembly that drug abuse be discouraged and that employees who choose to engage in drug abuse face the risk of unemployment and the forfeiture of workers' compensation benefits.

Tenn. Code Ann. § 50-9-101(a) (1996 Supp.) (emphasis added). Considering this unambiguous pronouncement and other relevant statutory provisions, we find no well-defined public policy which is violated by a private employer discharging an at-will employee who tests positive for drug use on a random drug test. Gilmore, supra.

## CONCLUSION

Stein has failed to identify a clear public policy, evidenced by an unambiguous constitutional, statutory, or regulatory provision, that was violated by her dismissal for testing positive for drug use on a random drug test. Therefore, she has failed to allege an essential element of her claim for wrongful discharge.

-10-

Accordingly, we affirm the Court of Appeals' judgment upholding the trial court's dismissal of Stein's claim. This cause is remanded to the trial court for further proceedings consistent with this decision.

_____
Frank F. Drowota, III
Justice

**Concur:**

Birch, C.J.,
Anderson, Reid, Holder, JJ.