IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 5, 2001 Session

## TERILYN SLOAN v. TRI-COUNTY ELECTRIC
## MEMBERSHIP CORP., ET AL.

**Appeal from the Circuit Court for Macon County**
**No. 4403     Clara Byrd, Judge**

---

**No. M2000-01794-COA-R3-CV - Filed February 7, 2002**

---

Plaintiff married her co-worker, and one of them was forced to resign pursuant to the company's anti-nepotism policy prohibiting concurrent employment of spouses. Plaintiff resigned and brought this action for wrongful discharge alleging her dismissal violated public policy favoring marriage and was due to her exercise of the fundamental right to marry. The trial court dismissed for failure to state a cause of action. Because Plaintiff has failed to show that a policy prohibiting concurrent employment of spouses violates a clear mandate of public policy, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., and WILLIAM B. CAIN, JJ., joined.

Peter Skeie, Jeffrey S. Frensley, Nashville, Tennessee, for the appellant, Terilyn Sloan.

Thomas M. Donnell, Jr., Jennifer A. Lawrence, Nashville, Tennessee, for the appellee, Tri-County Electric Membership Corporation.

### OPINION

Plaintiff, Terilyn Sloan, was an employee of Defendant, Tri-County Electric, working in the Human Resource Department. She married DeWayne Sloan, also an employee of Tri-County. The Sloans were informed by management that, because of Tri-County's anti-nepotism policy, one of them had to resign within one month or both would be terminated. Terilyn Sloan resigned. Ms. Sloan sued alleging Tri-County tortiously violated public policy when it fired her and seeking compensatory and punitive damages, reinstatement, back pay, and attorney fees and costs.

Tri-County filed a motion to dismiss arguing Ms. Sloan failed to state a claim upon which relief could be granted. The trial court granted that motion and dismissed the complaint. This appeal ensued.

Ms. Sloan's claim is that dismissal of an employee for reasons that violate public policy or because the employee exercised a fundamental right is actionable. She asserts that marriage is a fundamental right that is favored by the public policy of this state and that she was forced to resign because she got married.

The parties do not dispute that Ms. Sloan (or her husband) was forced to resign because Tri-State enforced its policy, in effect since 1977, which prohibits concurrent employment by "close relatives" and "immediate family." The policy defines those terms as including spouses. The policy was routinely discussed with potential new employees, and Ms. Sloan was aware of the policy.

Tri-State argues that its anti-nepotism policy does not contravene public policy or any constitutional, statutory, or regulatory provision. While it does not dispute that marriage is favored by public policy, it argues that enforcement of its employment policy does not infringe upon an individual's right to marry. Rather, Tri-State asserts the policy imposes a restriction upon employment based upon legitimate business reasons. According to Tri-State, the problem with Ms. Sloan's continued employment was not her marriage, but was her marriage to a co-worker.

We are persuaded that Tri-County's definition of the issue presented is the correct one. Ms. Sloan did not lose her employment because Tri-State enforced a personnel policy limiting employment to unmarried persons. *See Boaden v. Department of Law Enforcement*, 664 N.E.2d 61 (Ill. 1996) (no-spouse policies are not based on individual's marital status, but on identity of the spouse). To maintain this action, Ms. Sloan must show that an employment policy prohibiting concurrent employment of spouses violates legal protections or a clear mandate of public policy. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 717 (Tenn. 1997).

The doctrine of employment at-will is a longstanding rule in Tennessee which recognizes the right of either the employer or the employee to terminate the employment relationship at any time for good cause, bad cause, or no cause at all, without being guilty of a legal wrong. *Id.* By statute and case law, however, some restrictions have been imposed upon the right of an employer to terminate an at-will employee. *Id.*

In *Chism v. Mid-South Milling Co., Inc.*, 762 S.W.2d 552, 555-56 (Tenn. 1988), our Supreme Court discussed those limited situations in which courts will examine the basis for an employment action involving an at-will employee.

> Both by statute and case law in this and other states some restrictions have been imposed upon the right of an employer to terminate an employee, usually for reasons of well-defined public policy. For example, in Tennessee any right to terminate an employee for service on a jury has been eliminated, and statutory sanctions for violation have been provided. *See* T.C.A. § 22-4-108(f). There are restrictions upon employment or termination of persons for discriminatory reasons involving race, creed, color, sex, age, religion or national origin. *See* T.C.A. § 4-21-401(a). There are similar restraints to prevent discrimination in the hiring and termination of

handicapped persons. *See* T.C.A. § 8-50-103; *see also Plasti-Line, Inc. v. Tennessee Human Rights Comm'n*, 746 S.W.2d 691 (Tenn. 1988).

Further, in the case of *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441 (Tenn. 1984) this Court recognized that there could be a claim for retaliatory discharge where a statutory policy is violated but the statute does not prescribe a remedy for the violation. In that case an employee was allegedly discharged for exercising her rights under the worker's compensation statutes. The Court held that if such allegations could be established by competent proof, a claim for damages in tort would lie.

. . .

It is obvious that the exception cannot be permitted to consume or eliminate the general rule. Corporate management, in cases such as this, must be allowed a great deal of discretion in the employing or discharging of corporate officers, where the latter are not employed for a definite term and have no formal contract of employment. *Whittaker v. Care-More, Inc.*, 621 S.W.2d 395, 397 (Tenn. Ct. App. 1981). To be liable for retaliatory discharge in cases such as this, the employer must violate a clear public policy. Usually this policy will be evidenced by an unambiguous constitutional, statutory or regulatory provision. Further, the violation must be a substantial factor in the termination of an at-will employee, agent or officer.[1]

. . .

In order to state a claim for relief for this very exceptional tort action, the pleader must show clear violation of some well-defined and established public policy.

*Chism*, 762 S.W.2d at 555-556.

In *Stein*, the Court again discussed the balance to be achieved in wrongful discharge allegations based on public policy.

This cause of action for retaliatory or wrongful discharge, which was first recognized by this Court in *Clanton*, strikes a balance between the employment-at-will doctrine and rights granted employees under well-defined expressions of public policy. The employment-at-will doctrine recognizes that employers need freedom to make their

---

[1]The Court listed examples of "clearly defined public policies which warrant the protection provided by this cause of action," citing cases from other jurisdictions. They included dismissals for refusal to commit perjury, insistence on obeying a lawful subpoena, insistence on giving truthful testimony, honoring a subpoena to jury duty, and failing to seek release from jury duty. *Chism*, 762 S.W.2d at 556. In addition, the court cited cases where employees refused to falsify records or to acquiesce in illegal conduct, stating that in those cases specific statutory violations were charged and the employees had exposure to sanctions. *Id.*

own business judgments without interference from the courts. "[A]n employer's ability to make and act upon independent assessments of an employee's abilities and job performance as well as business needs is essential to the free-enterprise system." In contrast, the action for retaliatory or wrongful discharge recognizes that, in limited circumstances, certain well-defined, unambiguous principles of public policy confer upon employees implicit rights which must not be circumscribed or chilled by the potential of termination. Therefore, the tort action of retaliatory or wrongful discharge is available to employees discharged as a consequence of an employer's violation of a clearly expressed public policy.

*Stein*, 945 S.W.2d at 717 (internal citations omitted). Further, the Court noted, "to maintain this delicate balance, this Court has emphasized that the exception to the at-will doctrine must be narrowly applied and not be permitted to consume the general rule." *Id*. at 717 n.3. In *Stein*, where the retaliatory discharge claim was based on a dismissal due to the employee failing a drug test, the court succinctly enunciated the test to be applied:

> Therefore, to prevail in this appeal, [the plaintiff] must point to a clear mandate of public policy, evidenced by an unambiguous constitutional, statutory, or regulatory provision, which Davidson [the employer] violated when it discharged her for testing positive on a random drug test.

*Id*. at 717. Accordingly, Ms. Sloan must identify such a clear mandate against employment policies prohibiting concurrent employment of spouses.

The requirement that the public policy must be found in constitutional, statutory, or regulatory provisions is based upon the limited role that courts play in "finding" new public policy. In a case where the court was asked to create an additional public policy basis for a retaliatory discharge claim, the Tennessee Supreme Court stated, "we are of the opinion that only in the most extraordinary circumstances should the courts of this State impose their judgment in an area which, in the first instance, is clearly a legislative function." *Watson v. Cleveland Chair Co.*, 789 S.W.2d 538, 540 (Tenn. 1989). Only in the absence of any declaration in the Constitution and statutes may public policy be determined from judicial decisions because all questions of policy are for the determination of the legislature, and not for the courts. *Watson*, 789 S.W.2d at 540-41 (quoting *Cavender v. Hewitt*, 145 Tenn. 471, 475-76, 239 S.W. 767, 768 (1921)).

Again, the *Stein* court succinctly summarized:

> This court does not engage in hypothetical guessing to fashion public policy. Unlike other jurisdictions, Tennessee courts do not, in the context of wrongful discharge actions, attempt to discern public policy from the common law.

*Stein*, 945 S.W.2d at 717.

*Stein* involved a company policy on random drug testing. The Court found that the constitutional guarantee of privacy was not a source of public policy which restricts the right of private employers to discharge at-will employees, because constitutional guarantees restrain government conduct and generally do not restrain the conduct of private parties. *Id.* at 718.

The United States Court of Appeals for the Sixth Circuit has examined the anti-nepotism policies of public employers in several cases alleging that employment actions taken pursuant to such policies infringed upon an individual's First Amendment associational right to marry. *See Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703 (6th Cir. 2001); *Montgomery v. Carr*, 101 F.3d 1117 (6th Cir. 1996); *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130 (6th Cir. 1995).

In *Montgomery*, the court determined that the school system's anti-nepotism policy, requiring transfer of one spouse if employees married, was not a direct and substantial infringement upon the right to marry and, consequently, was subject to a rational basis analysis. *Montgomery*, 101 F.3d at 1125. The court noted that virtually every court to have confronted a constitutional challenge to an anti-nepotism policy had applied rational basis scrutiny and had concluded that those policies passed constitutional muster. *Id.* at 1126, 1131. The court found the justifications put forward in support of the policy, including avoidance of friction and disharmony, represented a legitimate governmental interest and concluded the policy was not an irrational means for securing those interests. *Id.* at 1130.

In *Vaughn*, a challenge to a governmental employer's anti-nepotism policy which required termination of one spouse if employees married, the court followed the holding in *Montgomery* while recognizing that the policy at issue provided more severe repercussions than the one in *Montgomery*. The court found that the policy imposed only a non-oppressive burden on the decision to marry. *Vaughn*, 269 F.3d at 712. The policy did not bar the two employees from getting married; it only made it economically burdensome to marry someone in a small group of people, co-employees. *Id.* The court found that the purposes of the anti-nepotism rule met the rational basis standard and that the rule advanced a legitimate governmental interest. *Id.* Among those purposes were "(1) to prevent one employee from assuming the role of 'spokesperson' for both, (2) to avoid involving or angering a second employee when an employee is reprimanded, (3) and to avoid marital strife or fraternization in the workplace." *Id.* The court specifically noted that a government employer may have a legitimate concern about the inherent loyalty between spouses, making discipline more difficult. *Id.*

Similarly, the court in *Wright* found the anti-nepotism policy was rationally related to legitimate government interests in avoiding potential conflicts and in preventing deterioration of morale. *Wright*, 58 F.3d at 1136; *see also Parks v. City of Warner Robins, Georgia*, 43 F.3d 609, 615 (11th Cir. 1995) (upholding anti-nepotism policy as means of "avoiding conflicts of interests between work-related and family-related obligations; reducing favoritism or even the appearance of favoritism; preventing family conflicts from affecting the workplace . . .").

Finding no constitutional source for a clearly defined public policy, the Court in *Stein* looked at statutory and regulatory provisions. The Court found there was no statutory provision expressly prohibiting an employer from discharging an employee who tests positive in a drug screen, and that existing statutes regarding random drug tests in other contexts appear to favor them. The legislature has specifically authorized drug testing for high school students and for certain types of public employees. In addition, the legislature adopted a statute declaring ineligible for unemployment compensation anyone who left employment to avoid taking a drug screening test or who left after receiving a positive result of such test. Also, state public policy supports the promotion of a drug free workplace.

Tennessee has no statute regulating private employers' decisions to employ, refuse to employ, or employ under certain conditions, people who are married to each other. Tennessee has not chosen to include spouses who want to work together in the groups given statutory protection against employment discrimination. The Tennessee Human Rights Act is intended to "safeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age or national origin in connection with employment. . . ." Tenn. Code Ann. § 4-21-101(a)(3).

Some states have statutes prohibiting employment discrimination on the basis of "marital status." While such language covers decisions made because a person is married, single, divorced, separated, or widowed, there is a split of authority among the courts in such states as to whether "marital status" includes employment actions based on the identity of one's spouse. *See Muller v. BP Exploration (Alaska) Inc.*, 923 P.2d 783, 787 (Alaska 1996) (listing cases on each side of the issue).[2] Those decisions reflect each court's analysis of the legislative language and history of the particular statute. Nonetheless, we find some of the reasoning applicable to the issue before us, even recognizing the fact that Tennessee has no prohibition against employment decisions based on marital status.

---

[2] Although almost half of the states have adopted laws which render marital status discrimination illegal, very few of those laws have provided employees protection against anti-nepotism rules. Of the states which have adopted laws prohibiting discrimination on the basis of marital status, five (Hawaii, Minnesota, Montana, North Dakota, and Oregon) have chosen to broadly interpret these laws. Broad interpretation of marital status enables courts to find discrimination where an employee would not have been fired but for his or her marriage to a co-worker. Only three of these states (North Dakota, Minnesota, and Oregon) have statues which specifically prohibit discrimination based on the identity of the spouse. *See* Randi Wolkenbreit, *In Order to Form a More Perfect Union: Applying No-Spouse Rules to Employees Who Meet at Work*, 31 COLUM. J.L. & SOC. PROBS. 119, 133-39 (1997) for a discussion of various state statutes and case law applicable to marital status discrimination as well as a discussion of no-spouse policies in the workplace.

In *Muller*, the court found that anti-nepotism and no-spouse policies were common among businesses in Alaska; that the legislature had adopted anti-nepotism statutes to apply to governmental positions; and that the purposes of the human rights act were to prevent prejudices against persons in protected classes and to eliminate the effects of such biases. *Id.* at 789-791. The court found that people who want to work with their spouses do not constitute such a protected class and that there was no basis for extending the anti-discrimination statute:

> . . . we find that the purpose of [the statute] is to prohibit discrimination against a person based on his or her condition of being married or unmarried, not on the identity of one's spouse. To whom one is married is not a class-defining factor, unlike all the other factors listed. . . . Extending the reach of the anti-discrimination law to employment decisions based on to whom a person is married would change the focus of the law from discrimination based on broad categories . . . to a highly individual factor.

*Id.* at 791.

The *Muller* court also found that anti-nepotism policies exist to prevent "potential emotional interference with job performance, collusion in grievance disputes, favoritism, morale problems resulting from the appearance of favoritism, and conflicts of interests that arise if an employee is required to supervise the employee's spouse." *Id.* (quoting *Miller v. C. A. Muer Corp.*, 362 N.W.2d 650, 654 (Mich. 1984)).

In examining the plaintiffs' claims that a narrow interpretation of "marital status" was not consistent with Alaska's public policy encouraging marriage and family, the court stated:

> The state has an interest in protecting a person's right to choose the form that his or her relationships will take. It is for precisely this reason that the [Alaska Human Rights Act] prohibits discrimination on the basis of whether one is married or unmarried. However, the state also has an interest in protecting the interests of its businesses and companies by allowing them to adopt reasonable employment policies. Therefore, although a person's employment may be affected by the identity of his or her spouse, that effect does not violate any public policy that initially mandated Alaska's anti-discrimination legislation.

*Id.* at 792.

Not only has the Tennessee General Assembly not legislated any restriction on a private employer's decision not to employ spouses, it has actually placed a limitation on employment of relatives in government positions. Tenn. Code Ann. §§ 8-31-101 - 107. Known as the Tennessee State Employees Uniform Nepotism Policy Act of 1980, this set of statutes prohibits supervision by one relative of another. Tenn. Code Ann. § 8-31-103. Relative includes spouse, and when employees violate the prohibition as a result of a marriage, such violation is to be resolved by

transfer or resignation. Tenn. Code Ann. § 8-31-104.[3] Thus, to the extent the General Assembly has spoken to anti-nepotism policies, it has not expressed a disapproval of them as a prerogative of employers.

Ms. Sloan has provided no clear mandate opposing anti-nepotism policies which prohibit concurrent employment of spouses. Her reliance on Tennessee's policy favoring marriage is misplaced.[4] We agree with the authorities discussed above that a limitation on employment of spouses is not an action based upon marital status. Tri-County's policy does not allow employment action based on whether an employee is married or unmarried. Its policy prohibiting concurrent employment of spouses does not contravene the state's public policy favoring marriage.

Accordingly, we affirm the trial court's dismissal of Ms. Sloan's claim because she has failed to allege the elements necessary to sustain a cause of action for wrongful or retaliatory discharge in violation of clear public policy. Therefore, we affirm the decision of the trial court and remand this cause for any necessary further proceedings. All costs are taxed to the Appellant, Terilyn Sloan.

_____
PATRICIA J. COTTRELL, JUDGE

---

[3] We recognize that the opportunity for transfer is less burdensome than termination and that the State policy is concerned with supervision over relatives. However, the size of a company impacts its ability to fashion accommodations for spouses. In any event, in at-will employment situations, courts have a limited role in reviewing employment decisions or policies; we have a limited license to inquire into the wisdom of an employment policy. Therefore, Tri-County is not required to justify to us its decision to require one co-worker to resign or be terminated when co-workers get married as opposed to any other arrangement.

[4] Illinois and the Seventh Circuit have addressed a situation similar to the instant case wherein a plaintiff attempted to bring a cause of action for retaliatory discharge on the basis that the discharge was in violation of public policy. *See McCluskey v. Clark Oil & Refining Corp.*, 498 N.E.2d 559, 561 (Ill. App. Ct. 1986) (holding state statute intended to regulate the parties to a marriage and divorce, and not intended to regulate the conduct of employers, does not provide any basis for a claim of retaliatory discharge in violation of public policy); *Talley v. Washington Inventory Serv.*, 37 F.3d 310, 312 (7th Cir. 1994) (following decision in *McCluskey* that termination from employment based on marriage to a co-worker is not actionable as a common law tort claim for retaliatory discharge when plaintiff claimed she was fired because of a social relationship with a co-worker).