# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 31, 2011

## SALLY JO WITTY v. CHRISTOPHER CANTRELL ET AL.

**Appeal from the Circuit Court for Blount County**
No. L-17145    David R. Duggan, Judge

---

**No. E2010-02303-COA-R3-CV-FILED-JUNE 29, 2011**

---

Sally Jo Witty is a teacher employed by the Blount County School System. She filed this action after her request to draw pay from a pool of donated sick leave was denied. She named as defendants the trustees appointed to administer the pool (collectively "the Trustees"). She also sued the Blount County Board of Education ("the School Board") and alleged it is vicariously liable. She demanded the full monetary value of the requested sick leave and also asked for damages to compensate her for the mental suffering resulting from the "wrongful" decision to deny her benefits. The trial court held that the Trustees were an independent body for which the School Board could not be held vicariously liable. It also held that the Trustees were immune from liability in their individual capacities and that the action filed against the Trustees in their official capacity was a petition for writ of certiorari that was not timely filed. Therefore, it dismissed the complaint. Witty appeals. We affirm the trial court's judgment in part and vacate it in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part and Vacated in Part; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Kevin W. Shepherd, Maryville, Tennessee, for the appellant, Sally Jo Witty.

Robert N. Goddard, Maryville, Tennessee, for the appellees, Christopher Cantrell, Linda Goins, Alvin Hord, Dr. Don McNeilly and Alisa Teffeteller, as Trustees of the Sick Leave Bank of the Blount County Board of Education, and the Blount County Board of Education.

## OPINION

I.

A.

A "sick leave bank" is

> a local system accounting of voluntarily pooled and irrevocably
> donated accumulated personal sick leave that is collected for the
> purpose of providing sick leave to members of the program who
> have suffered an unplanned personal illness, injury, disability or
> quarantine and whose personal sick leave is exhausted.

Tenn. Code Ann. § 49-5-802 (5)(2009). Local school systems are authorized by the Tennessee Teachers' Sick Leave Bank Act ("the Act") to form a sick leave bank. Tenn. Code Ann. § 49-5-803. The process of forming a sick leave bank is initiated by the filing of a petition of at least 20 teachers in the local system. *Id*. If the school board approves the petition, the request along with "proposed operating guidelines" are submitted to the commissioner of education. *Id*. If the commissioner approves the submission, the sick leave bank is born "effective the next August 1." *Id*. It is administered by a board of five trustees. Tenn. Code Ann. §49-5-804. Two trustees are appointed by the school board; two are appointed by the teachers; and one is appointed by the director of schools. *Id*.

Participation is voluntary. Tenn. Code Ann. § 49-5-806. A teacher who wishes to participate must donate a specified number of sick days from her own personal accumulation of sick leave. *Id*. Once donated, the leave is non-refundable. Tenn. Code § 49-5-807. A teacher may not draw from the bank until she has exhausted her own accumulated sick leave. Tenn. Code § 49-5-808(e). "Sick leave granted a member from the bank need not be repaid by the individual except as all members are uniformly assessed." Tenn. Code § 49-5-808(k).

Witty elected to participate in the sick leave bank and donated her quota of personal accumulated sick leave. She requested pay from the sick leave bank in January 2008 to cover an absence from work due to back surgery and rehabilitation. The request was denied on February 15, 2008. Witty filed this action in chancery court on June 11, 2009. It was later transferred to the trial court.

The complaint alleges that "the Trustees restricted the definition of when . . . leave is appropriate by stating that it only applied to life-threatening injuries, and since [Witty's'] surgery was not 'life-threatening,' it was not covered." Witty alleges that the restrictive definition used by the trustees is in violation of the statutory parameters. Witty's complaint alleges she was "wrongfully denied the benefits" of the sick leave bank and that she "was

damaged by the misfeasance of the Defendants." She alleges that the School Board is "vicariously responsible" for the actions of the Trustees because (1) the Board established a policy that the Trustees followed and (2) it is the employer and offered the sick leave bank as a benefit. Witty seeks "full payment of [leave] wrongfully withheld" as well as damages for "increased stress, loss of quality of her life, anxiety, and insomnia."

The School Board filed a motion to dismiss on the ground that, notwithstanding any allegation in the complaint, as a matter of law the sick leave bank as administered by the Trustees is an independent body established by statute. Therefore, as a matter of law, so the argument goes, it is not an instrumentality or agent of the School Board for which the Board could be held liable.

The Trustees filed two motions, one for the allegations made against them as individuals and one for the allegations made against them in their official capacity. The Trustees asserted that there were no factual allegations of individual wrongdoing to support a claim against them as individuals. They also asserted that they were immune from personal liability pursuant to Tenn. Code Ann. § 29-20-201(b)(2)(2000 & Supp. 2010), which states:

> All members of boards, commissions, agencies, authorities, and other governing bodies of any governmental entity, created by public or private act, whether compensated or not, shall be immune from suit arising from the conduct of the affairs of such board, commission, agency, authority, or other governing body. Such immunity from suit shall be removed when such conduct amounts to willful, wanton, or gross negligence.

The motion directed at dismissing claims asserted against the Trustees in their official capacity was based upon the assertion that the complaint was not timely filed. The substance of the motion was that the only means of judicial review of the official actions of the Trustees, sitting as a board, was through petition for writ of certiorari, and that a petition for writ of certiorari must be filed within 60 days of the action being challenged. The complaint in this case was filed more than a year after the denial of benefits.

Witty responded to the School Board's motion to dismiss by filing a copy of the School Board's Policy No. 5.3021. The Policy is entitled "Sick Leave Bank." It purports to establish "rules" applicable to requests for sick leave and states that the purpose of the sick leave bank is to provide leave to a member who has exhausted her own personal leave because of "a life-threatening illness, emergency surgery or accident."

B.

The trial court began its analysis by noting that it had been unable to find any cases on point and, therefore, it might well be deciding questions of first impression. With regard to the School Board's motion to dismiss, the court held:

> There is no dispute that the Blount County Schools Sick Leave Bank has been established according to the statutory procedure. Accordingly, the Bank has been established by the Tennessee commissioner of education rather than by the Blount County School Board. Furthermore, the Trustees serving the Bank constitute a board or commission functioning under the laws of Tennessee pursuant to Tenn. Code Ann. § 27-9-101.
>
> Accordingly, the Bank is not an agency or instrumentality of the Blount County Board of Education. Rather, it is a board or commission existing and functioning pursuant to State law. It is noted that the Board appoints only two (2) trustees, and further the law charges such trustees, rather than the local board, with authority to provide rules and regulations, and to administer the Bank, including having full authority to approve or reject each request for additional sick leave. The local board has no role in the functioning of the bank and with respect to the decisions of the trustees. Accordingly, the Blount County Board of Education can have no vicarious liability for actions of the Bank Trustees.
>
> Plaintiff argues that the Blount County Board of Education has adopted a policy that sets forth the purpose of the Sick Leave Bank, provides how the Bank is to be administered, and further lists the applicable rules and procedures of the Bank.
>
> The fact that the Board has adopted such a policy does not, and cannot, override State statutory law. Pursuant to the clear and unambiguous provisions of the statutory law, the board of trustees of any local sick leave bank acts independently of the local board of education, the local board has no oversight role or any other involvement in the bank, and indeed has no role whatsoever in the operations of any local sick leave bank other than with respect to the initial approval of the petition requesting

establishment of such a bank. It may be interesting to speculate about why the Board has chosen to adopt a policy pertaining the Bank. . . . In any event, the policy does not in any way contradict the statutory framework. Secondly, certainly the law is well-established in Tennessee that a local board of education may not circumvent state statutory law through board policies and even through negotiated contracts. Furthermore, and thirdly, pursuant to Tenn. Code Ann. § 49-2-207, a policy manual is simply a compilation and publication of operating policies and procedures. . . . Certainly it would be appropriate to include within such a manual the rules and regulations adopted by the trustees of a local bank governing such a bank.

(Case citation omitted.)

With regard to the claims against the Trustees, the court stated:

Certainly to the extent Plaintiff alleges misfeasance of the performance of fiduciary duties of trustees, and to the extent Plaintiff seeks compensatory damages for matters that go beyond compensation for sick leave, such as increased stress, loss of quality of her life, anxiety and insomnia, such allegations sound in tort. Accordingly, the provisions of the Tennessee Governmental Tort Liability Act are applicable. Pursuant to the provisions of Tenn. Code Ann. § 29-20-201(b)(2), members of boards, commissions, agencies, authorities, and other governing bodies of any governmental entity, created by statutory act, are immune from suit arising from the conduct of the affairs of such a board, commission, agency, authority, or other governing body. That immunity is removed only when such conduct amounts to willful, wanton, or gross negligence.

Next, Defendants seek the dismissal of all remaining claims against the five Trustees based on the applicable statute of limitations. . . .

Defendants rely upon both the common law writ of certiorari and the statutory writ of certiorari in making their argument. Often these two bases for the writ of certiorari are used almost interchangeably, though they are codified separately as found at

-5-

Tenn. Code Ann. §§ 27-8-101 *et seq.*, and at Tenn. Code Ann. §§27-9-101 *et seq.* . . .

It appears to this Court that the more applicable procedure for the writ of certiorari is that found at Tenn. Code Ann. §§ 27-9-101 *et seq.* pertaining to the situation where a person, who is aggrieved by a final order or judgment of any board or commission functioning under State law, seeks review of that order or judgment by the courts, and where such review is not otherwise specifically provided for. It seems to this Court that the important provision . . . is that where no right of appeal is provided in the law for such a board or commission's order, judgment or decision, then the complaining party must proceed by petition for writ of certiorari in order to seek review of that board or commission's decision. The Trustees who administer the Bank in Blount County perform that duty as such a commission or board, the Bank having been established by the Tennessee commissioner of education pursuant to the statutory procedure.

Pursuant to Tenn. Code Ann. § 27-9-102, any petition for writ of certiorari was required to have been filed within sixty (60) days from the decision of the Trustees complained of. That decision was made February 15, 2008, and no petition for writ of certiorari was filed within sixty (60) days of that date. Rather, Plaintiff chose to file a Complaint on June 11, 2009.

Accordingly, the Court holds that Plaintiff's Complaint is time-barred in addition to the fact that, procedurally, Plaintiff has not proceeded in the form of certiorari.

Plaintiff claims that the filing of her Complaint should be governed by the six-year statute of limitations codified at Tenn. Code Ann. § 28-3-109. It is noted, first, that Plaintiff's argument fails to acknowledge that Plaintiff should have proceeded by petition for the writ of certiorari. Second, while Tenn. Code Ann. § 28-3-109(2) refers to actions for nonfeasance, misfeasance and malfeasance against sheriffs, clerks and other public officers, trustees of a local sick leave bank are not such public officers. Furthermore, pursuant to

Tenn. Code Ann. § 28-3-101, the purpose of the chapter pertaining to limitations of action is to establish such limitations for causes of action that are not otherwise expressly provided for. A limitation of actions is expressly provided for with respect to both the common law writ of certiorari and the statutory writ of certiorari.

(Footnote in original omitted.)

## II.

Witty raises the following three issues, which we have paraphrased:

Whether the trial court erred in dismissing the complaint against the school board.

Whether the trial court erred in holding that the trustees were entitled to immunity.

Whether the trial court erred in applying the 60 day statute of limitations, applicable to petitions for writ of certiorari, to the claims against the trustees in their official capacity.

## III.

A dismissal for failure to state a claim is treated as a conclusion of law to be reviewed *de novo* without a presumption of correctness. ***Stein v. Davidson Hotel Co.***, 945 S.W.2d 714, 716 (Tenn. 1997). Review is conducted under some well-known principles:

In ruling on such a motion, courts must construe the allegations in the plaintiff's favor and accept allegations of fact as true. However, the inferences to be drawn from the facts or the legal conclusions set forth in a complaint are not required to be taken as true. ***Dobbs v. Guenther***, 846 S.W.2d 270, 273 (Tenn. App.1992).

***Riggs v. Burson***, 941 S.W.2d 44, 47-48 (Tenn. 1997). The motion should be denied unless it appears that the plaintiff can prove no set of facts in support of the claim that will justify relief. ***Stein***, 945 S.W.2d at 716. The construction of a statute and application of that construction to the facts are treated as questions of law to be reviewed *de novo* with no presumption of correctness. ***Nelson v. Wal-Mart Stores, Inc.***, 8 S.W.3d 625, 628 (Tenn. 1999).

IV.

Witty concedes that the decision of the trial court as to the School Board "appears sensible on its face," but argues that it will not withstand scrutiny under "the facts and law of the case." She argues "[f]irst and foremost" that through Policy 5.3021, mentioned previously, the School Board "is offering Sick Leave Bank as a specific benefit incidental to employment, and is showing actual managerial control over the Sick Leave Bank." Even if Witty is correct that the policy amounts to the offering of a "specific benefit" of employment, nevertheless this fact is immaterial in the absence of "managerial control" by the Board. For example, many employers offer health insurance to their employees as a benefit of employment without incurring liability when coverage by the insurer is denied. Likewise, an employer can offer retirement contributions to employees without facing liability when the independent company that is managing the contributions, without involvement by the employer, makes unwise or unfortunate investments. Thus, unless there is a possibility of managerial control by the School Board, we must concur with the trial court that the complaint does not state a claim against the School Board.

By construing the allegations of the complaint broadly, it can be read to say that the language in Policy 5.3021, stating that the purpose of the sick leave bank is to provide leave to members "who have suffered a life-threatening illness, emergency surgery or accident," is more restrictive than the statutory language and that the Trustees followed the language of 5.3021 rather than their own conscience. The Act states that the "purpose" of allowing pooled sick leave is to provide leave to members "who have suffered an unplanned personal illness, injury, disability or quarantine." Tenn. Code Ann. § 49-5-802(5). Nevertheless, the complaint does not seek to trace liability directly to the actions of the individual members of the School Board as it must to impose liability on the School Board as a body. *See* Tenn. Code Ann. § 29-20-310 (before a governmental entity is held liable, the court must find the negligence of an employee acting within the scope of employment). Rather, it seeks to impose liability on the School Board "vicariously . . . for the actions of the [T]rustees."

We agree with the trial court that the Act charges the Trustees with the responsibility of acting independently of the School Board's "policy." Pursuant to Tenn. Code Ann. § 49-5-805, "[t]he trustees shall provide for rules and regulations not inconsistent with [Tenn.

Code Ann. §§ 49-5-801 through 810]" by which they administer requests for leave. Further, Tenn. Code Ann. § 49-5-808 charges trustees as follows:

(a) The sick leave bank trustees shall administer the sick leave bank and approve or reject each request for additional sick leave. All actions of the trustees will require three (3) affirmative votes.

(b) The form and manner of application for use of leave from the bank shall be prescribed by the trustees.

(c) The trustees shall act either affirmatively or negatively on all applications within ten (10) calendar days of the application.

* * *.

(f) The trustees may establish regulations restricting the number of days that may be withdrawn from the bank by one (1) member on account of one (1) illness, particularly any known illness existing at the time the teacher elected to participate in the bank.

(g) Grants of sick leave from the bank shall not be made to any member on account of any elective surgery or illness of any member of the participant's family, or during any period the member is receiving disability benefits from social security or the state or local teachers' retirement plan.

(h) Leave grants from the bank, approved by the trustees, shall not be more than twenty (20) consecutive days for which the individual applicant would have otherwise lost pay. Applicants may submit requests for extensions of such leave grants before or after their prior grants expire. The maximum number of days any participant may receive in any fiscal year is sixty (60). The maximum number of days any participant may receive as a result of any one (1) illness, recurring diagnosed illness or accident is ninety (90).

-9-

* * *

(j) If the trustees determine it necessary, they may require a physician's certificate of condition from any member requesting additional leave. Refusal to comply will result in denial of the pending request for use of sick leave days from the bank.

* * *

(l) All records of the sick leave bank shall be kept in or by the office of the school system that handles regular sick leave records. The trustees shall inform this office of all applications they approve and the amount of additional leave granted the member.

Given this clear statutory delegation of decision-making to the Trustees of the sick leave bank, the Trustees could not have been acting as a mere agent or instrumentality of the School Board so as to give rise to vicarious liability notwithstanding conclusory allegations to the contrary. The statutory independence of the Trustees is important because it relegates the School Board's Policy, regardless of the School Board's intention in promulgating the Policy, as a nullity as far as the judgment of the Trustees is concerned.

Witty suggests that the School Board literally controls the board of trustees because it appoints two of five members and its employee, the director of schools, appoints another member. Thus, the argument goes, the School Board appoints three of the five voters on any given application for leave. Witty argues therefore that "the School Board in essence has members who can control and in fact override the other two [T]rustees in making decisions of granting or denying benefits to teachers." In the context of allegations of vicarious liability, Witty's argument does not overcome the independence with which the Trustees, once appointed, are charged under the Act. Accordingly, we hold that the trial court did not err in dismissing the School Board as a defendant for lack of a basis for imposing vicarious liability.

We move now to the issue of whether the trial court erred in dismissing the complaint against the Trustees in their personal capacity based on immunity. Witty argues that immunity does not apply because she is not "alleging neglect by a governmental employee, but is clearly focusing on the breach of fiduciary duties by the [T]rustees." This is not the ideal case for a lengthy discussion of the full parameters of sovereign immunity and the limited waiver of immunity found in the Tennessee Governmental Tort Liability Act ("the

GTLA") codified at Tenn. Code Ann. § 29-20-101, *et seq*. We are content to say that the complaint seeks to recover compensatory damages, including mental distress, from the Trustees in "their individual capacity for the wrongful performance of their duties." It accuses the Trustees of "misfeasance and nonfeasance of their duties as Trustees of the Sick Leave Bank." It could not be clearer that the claim for damages against the Trustees is based solely on their actions as the board that administers the pooling program. It is equally clear that the GTLA, in Tenn. Code Ann. § 29-20-201, provides immunity to the individual members of a board for any "suit arising from the conduct of the affairs of such" board. *Id*. We have found no case where a claimant has avoided the "immunity" concept found in the GTLA by characterizing its claims as one for "misfeasance" and then arguing that it is something other than negligence.

Witty does mention two cases in an effort to avoid operation of the GTLA. The first is *Phillips v. Taylor*, 833 S.W.2d 927 (Tenn. 1992). Witty offers *Phillips* as a case wherein the court allowed a beneficiary of a trust to recover from a trustee for infliction of emotional distress. Witty is incorrect. The actual result of *Phillips* was to reverse the award of emotional distress. *Id*. at 934. However, the more important distinction is that *Phillips* did not involve trustees of a board which was a governmental entity.

Witty offers *Travis v. Trustees of Lakewood Park*, No. M2009-01935-COA-R3-CV, 2010 WL 3488522 (Tenn. Ct. App. M.S., filed Sept 3, 2010), as a case which recognizes that liability may be imposed upon a county "for any just claim," and specifically for breach of contract. She argues that by analogy liability can be imposed in this case for breach of fiduciary duty. We do not understand how the second proposition logically follows from the first. More importantly, in *Travis*, the issue was the liability of the county and not the individual commissioners. *Travis* does not stand for the proposition that liability can be imposed against members of boards of governmental entities, for their actions as board members, in theories other than tort. *See also* Tenn. Code Ann. § 29-20-310(b)(when immunity is lifted against the entity, it is provided to the employee of the entity). Thus, we reject Witty's argument that the trial court erred in dismissing the claim against the Trustees in their personal capacity based on immunity.

We consider now whether the trial court erred in dismissing the plaintiff's complaint against the Trustees in their official capacity as an untimely-filed petition for writ of certiorari. The court noted that "procedurally, [Witty] has not proceeded in the form of certiorari," but reasoned that the case was really one for review of the actions of the board of trustees and that certiorari was the only form of review because no other form of appeal is provided. Of course, if the action is properly viewed as only a petition for writ of certiorari, then it was untimely. A petition for writ of certiorari must be filed with 60 days of the decision being challenged. Tenn. Code Ann. § 29-9-102 (2000); *Fairhaven Corp. V.*

***Tenn. Health Facilities Comm'n***, 566 S.W.2d 885, 886 (Tenn. Ct. App. 1976).

Witty argues on the basis of ***Fallin v. Knox County Board of Commissioners***, 656 S.W.2d 338 (Tenn. 1983), that certiorari is seldom the correct form of an action for review where there is no record of evidence assembled by the body whose decision is being challenged. The court in ***Fallin*** observed that certiorari is the proper form of action to challenge "administrative determinations, judicial or quasi-judicial in nature, [that] are accompanied by a record of evidence produced and the proceedings had in a particular case." ***Id***. at 342. Although there is no specific allegation in the complaint as to the lack of a hearing, Witty argues that there was no hearing and no proceedings were had. Presumably, if the case goes forward to discovery, she can produce such evidence. In ***Fallin***, the challenge was not to a decision of the board of zoning appeals but to a resolution of the county commissioners that purported to amend a comprehensive zoning plan. The complaint "was in the form of a petition for a writ of certiorari." ***Id***. at 340. The Supreme Court held that the case was more properly treated as a declaratory judgment action. ***Id***. at 342. It further held that the trial court is free to treat an action, incorrectly styled as a petition for writ of certiorari, as a declaratory judgment action. ***Id***. at 342.

This court had occasion very recently to consider whether an action was one for declaratory judgment or one for writ of certiorari in ***Stewart v. Ray***, No. M2010–01808–COA–R3–CV, 2011 WL 1938280 (Tenn. Ct. App. E.S., filed May 19, 2011). We stated:

> It is not always easy to determine whether a case is properly brought as a declaratory judgment action or by demand for a writ of certiorari. In general illustrative terms, a declaratory judgment action is the proper vehicle to challenge the validity of a statute or a rule, whereas certiorari is the vehicle for challenging an agency's final determination after a hearing that requires application of the statute or rule. Sometimes, however, provided the case is timely filed and the jurisdictional prerequisites are met, a given case might qualify for judicial review under both the declaratory judgment statute and the writ of certiorari.

***Id***. at *4 (citations omitted).

Witty does not expressly argue that this is an action for a declaratory judgment, and apparently did not expressly make that argument to the trial court, but the substance is there.

-12-

See ***Northeast Knox Utility District v. Stanfort Const.***, 206 S.W.3d 454, 461 (Tenn. Ct. App. 2006)(estoppel is not mentioned by name but considered as an issue because the facts and substance are argued). Given the liberal approach of ***Fallin***, even though the ***Fallin*** opinion was apparently not brought to the trial court's attention, we do not find there was a waiver of declaratory judgment as a possibility. From our reading of the complaint it seems to claim that the Trustees did not enact their own rules and procedures consistent with the statutory scheme as they are charged with doing but treated the "policy" of the School Board as the de facto rules and regulations of the sick leave bank and then denied Witty's application on the basis of the policy. If Witty is able to prove a set of facts consistent with the above scenario, we believe she would be entitled to some form of relief, even if it is no more than an order to reconsider her application in light of rules and regulations that are consistent with the statutory scheme. Pursuant to Tenn. Code Ann. §§ 29-14-101 through 113 (2000), the court may declare Witty's rights pursuant to the Act, declare whether the policy is inconsistent with the Act, and order the Trustees to act or refrain from acting in a certain way in light of its other determinations.

The question then becomes what is the appropriate statute of limitations for a declaratory judgment action that challenges the rules and regulations of a board of trustees of a local sick leave bank. There is no universal statute of limitations applicable to all actions for declaratory judgment. *See* ***Hughley v. State***, 208 S.W.3d 388, 395 (Tenn. 2006). The correct statute can often be identified by the relief being sought. ***Id***. Where no specific statute of limitations can be identified, the general ten-year statute of limitations applies. ***Id***. Witty has argued consistently that the six-year statute of limitations applies because this is a claim against fiduciaries to determine that they have not performed according to their fiduciary duties. The case law supports her argument that the six-year statute of limitations found at Tenn. Code Ann. § 28-3-109 (2000) applies to claims against fiduciaries. ***Jackson v. Dobbs***, 290 S.W. 402, 403 (Tenn. 1926)(*cited but distinguished in* ***Home For Aged v. Nashville Trust Co.***, 202 S.W.2d 178, 182 (Tenn. 1947)). The remedy, if any, is an order to the Trustees of the Sick Leave Bank. Therefore, we agree with Witty that the six-year statute of limitations is applicable to her claim and that the 60 day statute of limitations does not bar her action, as we have construed it.

We have noted that the trial court did not have the benefit of a pleading that identified the case as an action for declaratory judgment. We fully understand that it was earnestly searching for the correct label to put on this action and that it did not consider a label that was not even mentioned as a possibility. Our ***de novo*** review, and particularly our consideration of ***Fallin***, has led us to a different conclusion of law. We therefore hold that the case against the Trustees in their official capacity is not barred by the statute of limitations.

V.

The judgment of the trial court is affirmed in part and vacated in part. That part of the judgment that dismisses all claims against the Blount County Board of Education is affirmed as is that part of the judgment that dismisses all claims against the Trustees individually. That part of the judgment that dismisses the claims against the Trustees in their official capacity is vacated. Costs on appeal are taxed one-half to the appellant, Sally Jo Witty, and one-half to the appellees, Christopher Cantrell, Linda Goins, Alvin Hord, Dr. Don McNeilly and Alisa Teffeteller, as Trustees of the Sick Leave Bank of the Blount County Board of Education. This matter is remanded, pursuant to applicable law, for further proceedings consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE