FILED

03/29/2017

Clerk of the
Appellate Courts



IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 2, 2017

## IN RE: JALEN O-H.

**Direct Appeal from the Juvenile Court for Davidson County**
**No. 2015-2419, PT 206322     Jennifer N. Wade, Special Judge**

_____

### No. M2016-01484-COA-R3-JV

_____

Father appeals an order of the trial court setting current child support, awarding retroactive child support, and changing the child's last name to a hyphenated name comprised of Father and Mother's surnames.  Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which RICHARD H. DINKINS and THOMAS R. FRIERSON, II, JJ., joined.

Edward Jordan Gross, Nashville, Tennessee, for the appellant, Father.

### OPINION

#### I. FACTS & PROCEDURAL HISTORY

Mother gave birth to Jalen O-H. (the "Child") on September 25, 2014.  Father was not present for the birth of the Child and did not sign the birth certificate.  However, on September 26, 2014, Father conducted a DNA test that ultimately confirmed Father was the biological father of the Child.  Mother and Father have never been married, nor have they lived in the same household.  Father visited the Child on a regular basis for the first three or four months of the Child's life but was not allowed to take the Child away from Mother, who was breastfeeding the Child at the time.  Beginning in January 2015, Father exercised more visitation, including overnight visitations with the Child.

In May 2015, Mother was hospitalized, and Father took custody of the Child. Shortly thereafter, Father filed the lawsuit at hand to establish parentage and for

emergency placement of the Child with him. Magistrate Michael O'Neil granted the emergency placement with Father on May 20, 2015. On May 28, 2015, the magistrate held a hearing with both Mother and Father present and ordered that the parties would each exercise a fairly equal amount of parenting time. On October 21, 2015, the court entered a custody order designating Mother as the primary residential parent, Father as the alternate residential parent, and allowing Father 85 days of visitation per year. At that time, Father was ordered to pay $639 in child support based on an income of $2,470.00 per month. Father was dissatisfied with this ruling and appealed the matter to the juvenile court.

The juvenile court heard Father's appeal on January 12, 2016, and issued a written order of parentage and support on February 8, 2016. In this order, the juvenile court concluded that Mother should remain the primary residential parent but that Father should be granted additional parenting time. At that time, Mother was given 224 days of parenting time, and Father was given 141 days of parenting time. Further, the February 8, 2016 order stated that the "issues of retroactive support which the Mother may raise, and the change of the child's name, which Father may raise, are reserved until the next hearing."

These two final issues were heard on May 12, 2016 before a special judge, who was sitting as juvenile court judge by designation. On June 27, 2016, the court entered a written order setting forth findings of fact and conclusions of law. In this order, the court ordered Father to pay Mother retroactive child support and changed the Child's name to a hyphenated version of Father and Mother's surnames. Father timely filed a notice of appeal.[1]

## II. ISSUES PRESENTED

Father presents the following issues for review on appeal, which we have restated:

    1.    Whether the trial court erred in assessing retroactive child support to the date of the Child's birth?

    2.    If retroactive child support is appropriate, whether the trial court erred in the calculation of the amount of retroactive support due by using incorrect income figures and assigning different support amounts for different periods of time?

---

[1]Mother did not file an appellate brief or otherwise participate in this appeal. The attorney who represented Mother at trial informed this Court by letter that she was withdrawing as counsel for Mother and would not be representing her on appeal.

3.	Whether the trial court erred in setting an amount of current child support that was in conflict with an existing order of support set forth in a final judgment?

4.	Whether the trial court erred in changing the Child's last name to a hyphenated name that includes the surnames of both Mother and Father rather than only the name of the Father?

## III. STANDARD OF REVIEW

In nonjury cases, this Court's review is *de novo*, with a presumption of correctness as to the trial court's factual determinations, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's conclusions of law, however, are afforded no such presumption. *Campbell v. Florida Steel,* 919 S.W.2d 26, 35 (Tenn.1996). This Court has set forth the following standard of review specifically for child support determinations:

> [T]he adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines.
>
> . . . .
>
> Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. Appellate courts do not have the latitude to substitute their discretion for that of the trial court. Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, and reasonable minds can disagree about its correctness. Discretionary decisions must, however, take the applicable law and the relevant facts into account.

*Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005) (internal citations omitted).

# IV. DISCUSSION

## 1. Assessment of Retroactive Child Support

Father contends that the trial court erred in determining that Father owes retroactive child support dating back to the Child's birth because, after Father filed his petition to establish parentage, he was given nearly equal parenting time with Mother. The Child Support Guidelines (the "Guidelines") specifically state that in cases establishing paternity, a "judgment must be entered to include an amount of monthly support due up to the date that an order for current support is entered from the date of the child's birth" unless the rebuttal provisions set forth in Tennessee Code Annotated sections 36-2-311(a)(11)[2] or 36-5-101(e)[3] have been established by clear and convincing evidence. Tenn. Comp. R. & Reg. 1240-02-04-.06(1). Father makes no argument on appeal that he has proven the rebuttal provisions of Tennessee Code Annotated sections 36-2-311(a)(11) or 36-5-101(e), and there is no evidence in the record to support their applicability to this case. Father's argument on this issue seems, in actuality, to be more of an argument about the *amount* of retroactive child support that was assessed, which we discuss in section 2 below. The Guidelines plainly contradict Father's assertion that the trial court erred in awarding retroactive child support back to the date of the Child's birth, and we therefore affirm the judgment of the trial court.

---

[2]Tennessee Code Annotated section 36-2-311(a)(11) provides:

> (A) Determination of child support pursuant to chapter 5 of this title. When making retroactive support awards pursuant to the child support guidelines established pursuant to this subsection (a), the court shall consider the following factors as a basis for deviation from the presumption in the child support guidelines that child and medical support for the benefit of the child shall be awarded retroactively to the date of the child's birth:
> 
> (i) The extent to which the father did not know, and could not have known, of the existence of the child, the birth of the child, his possible parentage of the child or the location of the child;
> 
> (ii) The extent to which the mother intentionally, and without good cause, failed or refused to notify the father of the existence of the child, the birth of the child, the father's possible parentage of the child or the location of the child; and
> 
> (iii) The attempts, if any, by the child's mother or caretaker to notify the father of the mother's pregnancy, or the existence of the child, the father's possible parentage or the location of the child[.]

[3]Tennessee Code Annotated section 36-5-101(e) describes additional circumstances under which an obligor parent may be entitled to a deviation in retroactive child support owed, including those relevant in cases of divorce or separation. Father does not argue that any of the circumstances in this statute apply to this case, and the parties were never married.

## 2. **Calculation of Retroactive Child Support**

Father next argues that the trial court erred in assessing retroactive support by assigning different figures to "arbitrary" blocks of time. The Guidelines set forth the following instructions for calculating the amount of retroactive child support due:

> For the monthly BCSO [basic child support order], apply the Guidelines in effect at the time of the order, using the Child Support Worksheet. Use the average monthly income of both parents over the past two (2) years as the amount to be entered for "monthly gross income," unless the tribunal finds that there is adequate evidence to support a different period of time for use in the calculation and makes such a finding in its order. Do not include any current additional expenses on the retroactive worksheet. Complete the worksheet for the retroactive monthly amount, and multiply the amount shown on the worksheet as the "Final Child Support Order" times the number of months the tribunal has determined to be the appropriate period for retroactive support.

Tenn. Comp. R. & Regs. 1240-02-04-.06(3)(a).

At the hearing on May 12, 2016, the trial court continued the hearing on Father's petition in the matter to determine the amount of retroactive child support owed by Father, particularly in light of his "newly provided tax information" and whether the Child's last name should be changed. The court heard testimony from Father and Mother regarding their incomes during the years 2014 and 2015 and Mother's child care expenses, and Mother and Father's tax returns for years 2014 and 2015 were entered into evidence.

On June 27, 2016, the court issued a written order and four separate income shares worksheets assessing child support for four distinct periods of time. In light of the multiple previous orders and agreements between the parties resulting in differing custody arrangements for different periods of time, the court concluded that child support should be assessed in the following amounts for the following time periods:

*"1) Child Support from September 26, 2014 – December 31, 2014, at a rate of $730 per month, for a total of $2336 owed for this period."*

In support of these figures, the court found that Father sought DNA testing of the Child on September 26, 2014. At this point in time, Father was visiting the Child on a regular basis, but he was not allowed to take the Child overnight because the Mother was breastfeeding. Mother returned to work in November 2014, and her average cost of work-related child care was $195. According to their 2014 tax returns, Mother's income

was $13,554.00, and Father's income was $49,149.00. The trial court entered this information into an income shares worksheet and calculated a total amount of $2,336.00 for the period between September 26, 2014 through December 31, 2014.

> "2) Child Support from January 1, 2015 to October 21, 2015, excluding approximately a month of 50/50 parenting time, at a rate of $661.00 per month, for a total of $5160.06 owed for this period."

In support of these figures, the court found that, in January 2015, Father began to exercise more visitation with the Child, including overnight visits. In May 2015, Mother was hospitalized, and Father initiated this lawsuit. On May 28, 2015, the magistrate ordered that the parties exercise a relatively equal amount of parenting time with the child. The court found that the parties adhered to this arrangement for about one month and then reverted back to the previous arrangement (with Mother being primarily responsible for the Child) until the court entered a new custody arrangement on October 21, 2015. During this period, Mother's child care expenses averaged $105 per month. According to their 2015 income tax returns, Mother's income for 2015 was $11,286, and Father's income was $44,537. The court entered this information into an income shares worksheet and calculated Father's child support obligation to be $5,160.06 for this period, excluding the one month of fairly equal parenting time between May and June of 2015.

> "3) Child Support for approximately one month of 50/50 parenting time from May 28, 2015 – June 28, 2015, at a rate of $467 per month, for a total of $467 owed for this period."

This period of time is the month of approximately equal parenting time explained in period (2) above. The court's calculations for this month on the income shares worksheet showed that Father owed $467 for the month spanning May 28, 2015 through June 28, 2015.

> "4) Child Support from October 21, 2015 to January 12, 2016, at a rate of [$]468 per month, for a total of $1268.13 owed for this period."

In support of these figures, the court found that on October 21, 2015, a custody order designated Mother as the primary residential parent and gave Father 85 days of visitation per year. At this time, Father was ordered to pay $639 per month in child support based on an imputed income of $2,470 per month. This order was modified on appeal by the juvenile court on January 12, 2016. Father paid Mother a total of $420 from the time the Child was born until January 2016. The trial court entered this information into an

income shares worksheet and calculated Father's child support obligation to be $1,268.13 for the period of October 21, 2015 through January 12, 2016.

The court then drew the following conclusions from the aforementioned income shares calculations:

> The total amount of child support owed was $9231.19 with a credit for $420 paid to the mother during these periods. This amount shall be subtracted from the total arrears. Father owes mother a total of $8,811.19 in arrears. Worksheets are attached to reflect the total arrears owed for each period. Father shall pay arrears at a rate of $150.00 per month in addition to his child support order in the amount of $468.00 per month, for a total of $618 until arrears are paid in full.

We agree with Father that there may have been less convoluted ways for the trial court to have calculated child support in this case. However, we do not agree that these blocks of time are arbitrary, as Father suggests. The court adequately explained the reasoning for its award and the different periods of time, and it carefully worked through four separate income shares worksheets to support the figures it derived. Upon review of the record, we conclude that the trial court's assessment of retroactive child support was within the range of reasonable alternatives available in this case, and that the court did not abuse its discretion in awarding retroactive child support.

## 3. **Current Child Support**

We now turn to Father's assertion that the court erred in setting the amount of his current child support obligation. In his initial statement of "Issues Presented for Appeal," Father requests that this Court consider whether the court "erred in assigning an amount of current child support in conflict with the existing order of current support when that issue had not been reserved for determination and was, at that time, a final judgment." Other than this statement of the issue, Father's brief does not articulate a clear argument or present any case law or other authority to support his contention that the court erred in setting Father's current child support obligation.

Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure states that the brief of an appellant shall contain the following:

> (7) An argument . . . setting forth:

> (A) the contentions of the appellant with respect to the issues to be presented, and the reasons therefor, including the reasons why the

contentions require appellate relief, with citations to the authorities and appropriate references to the record [ ] relied on.

Tenn. R. App. P. 27(a)(7). "[A]n issue may be deemed waived, even when it has been specifically raised as an issue, when the brief fails to include an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)." *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012).

> It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.

*Sneed v. Bd. of Prof'l Responsibility*, 301 S.W.3d 603, 615 (Tenn. 2010). "[P]arties must thoroughly brief the issues they expect the appellate court to consider." *Waters v. Farr*, 291 S.W.3d 873, 919 (Tenn. 2009).

Because of Father's failure to develop more than a skeletal argument regarding the issue of his current child support obligation, we deem this issue waived.

## 4. <u>Name Change</u>

Finally, Father asserts that the trial court erred in changing the Child's surname to a hyphenated name comprised of both Father and Mother's surnames rather than Father's name only. The record is not clear as to when or how Father first petitioned the trial court to change the Child's name to his last name. However, the order of parentage and support entered by the juvenile court on February 8, 2016 stated that "[t]he issues of retroactive child support . . . and the change of the child's name . . . are reserved until the next hearing." That "next hearing" was the hearing held before a special judge on May 12, 2016.

According to Father, "the Special Judge found the minor child's last name should be hyphenated to include both Father's and Mother's surname, *which was not proposed by either party*." (Emphasis added.) To the contrary, the transcript of the hearing on May 12, 2016 reveals that the Child currently had Mother's last name and that Mother did not want the Child's name changed at all. Father was the party petitioning the court for the Child's name to be changed to reflect his surname, and Father's counsel was the one who suggested the hyphenated name: "If your Honor please, I have submitted the possibility of a hyphenated name." Further, the trial court made a specific finding in the order from that hearing that Father was seeking to change the Child's surname to either his surname or a hyphenated surname containing both his and Mother's surnames. Again, the record is unclear as to the means by which Father petitioned the court to

8

change the Child's name in the first place, but it appears that Father was in fact the one who proposed the idea of a hyphenated name. We therefore reject Father's argument that the trial court "crafted a new proposed name that neither party sought."

Father next takes issue with the tradition that "out-of-wedlock children carry the last name of the Mother." Father invites this Court to "re-evaluate the criteria in this regard as to the appropriateness of arbitrarily assigning the maternal surname to a child born to unmarried parents." This argument demonstrates a misunderstanding of the law that governs the last name assigned to children. While this Court has articulated a standard for *changing* a non-marital child's surname, the Tennessee General Assembly has determined the default surname a child should be given in a particular situation. Relevant to this case, Tennessee Code Annotated section 68-3-305 states as follows:

> (b)(1)  If the mother was not married at the time of either conception or birth or between conception and birth . . . the surname of the child shall be that of either:
>
> (A)  The surname of the mother;
>
> (B)  The mother's maiden surname; or
>
> (C)  Any combination of the surnames listed in subdivisions (b)(1)(A) and (B).

Tenn. Code Ann. § 36-3-305. Father's arguments to this Court regarding the expediency of giving non-marital children their mother's last name are misplaced because this Court "cannot amend or modify any legislative acts . . . . Considerations of that sort must, in general, be addressed to the legislature." *Stein v. Davidson Hotel Co.,* 945 S.W.2d 714, 717 (Tenn. 1997).

Father also asserts that the trial court incorrectly applied the law when it declined to change the Child's name to Father's surname alone. The standard for changing a non-marital child's surname was set forth in *Barabas v. Rogers*:

> The courts should not change a child's surname unless the change promotes the child's best interests. Among the criteria for determining whether changing a child's surname will be in the child's best interests are:  (1) the child's preference, (2) the changes potential effect on the child's relationship with each parent (3) the length of time the child has had its present surname, (4) the degree of community respect associated with the present and proposed surname, and (5) the difficulty, harassment, or

9

embarrassment that the child may experience from bearing either its present or its proposed surname.

*Barabas v. Rogers*, 868 S.W.2d 283, 287 (Tenn. Ct. App. 1993) (internal citations omitted). The parent seeking to change a child's surname, which is Father in this case, has the burden of proving that the change will further the child's best interests. *See id.* In its order, the trial court correctly articulated this standard and carefully walked through each of these factors, finding as follows:

1) The child's preference – In this case, the child is not of age to have formed a preference;

2) The change's potential effect on the child's relationship with each parent – In this case, the Court believes that the father has exercised due care in determining whether this child was his or not. I, therefore, believe that a change in the child's surname will strengthen the relationship and bond that the child has with the father, but the change will not take away from the bond that the child has with the mother. The father has made the steps necessary to establish a relationship with the child, which would be weakened if the child does not [bear] the father's last name[;]

3) The length of time that the child has had her surname – In this case, the child is young; not yet school aged. The child has not learned the given name and does not have many records established in that name. The time the child has carried this name has been relatively short and therefore causes no hardship to the child if changed;

4) The degree of community respect associated with the present or proposed surname – In this case, there is no respect or disrespect associated with either of the parents' surnames. The proposed hyphenated surname . . . therefore does [not] have any disrespect associated with [it]. This Court finds that there is no connotation of ill repute for a child with a hyphenated surname; and

5) The difficulty, harassment, or embarrassment that the child will experience from bearing either its present or proposed surname – In this case the Court does not believe that there will be any embarrassment or difficulty in bearing her current name or the proposed name.

As such, I believe that the bond between [ ] father and his daughter to be one that is essential in the upbringing of the child in today's society. I

10

believe that in this case the father has initiated steps to determining whether this was his child and is pursuing the bond that his child will need long term. We live in a society when mixed families and nontraditional families are more common place. As such, this Court holds that the child's name shall be changed to [the hyphenated surname].

Father contends that, based on the trial court's findings, the judge should have determined that the Child's name would be changed to his surname alone rather than the hyphenated name. We again note that Father and/or his counsel were the ones who proposed the option of the hyphenated name, and Mother has not appealed the issue. We conclude that the facts in the record do not preponderate against the trial court's finding that the best interests of the Child are served by changing the Child's last name to a hyphenated name comprised of the surnames of Father and Mother. Accordingly, we affirm the order of the trial court.

## IV. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to the appellant, Father, and his surety, for which execution may issue if necessary.

_____
BRANDON O. GIBSON, JUDGE