IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 11, 2015 Session


ANTHONY HOLDER, ET AL. V. SHELBY COUNTY, TENNESSEE

Appeal from the Circuit Court for Shelby County
No. CT00175214    Karen R. Williams, Judge

———————————————

No. W2014-01910-COA-R3-CV- Filed April 21, 2015

———————————————

Appellant father filed a complaint for damages against the defendant county, alleging that the negligence of a county employee caused the death of his son. The county filed a motion to dismiss the complaint based upon sovereign immunity. The trial court granted the motion to dismiss, concluding that the county employee's actions constituted intentional torts for which immunity was not removed, and that the employee's actions were outside the scope of his employment. We reverse and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Reversed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the Court, in which BRANDON O. GIBSON J., and JOHN EVERETT WILLIAMS, SP. J., joined.

Robert L. J. Spence, Jr., and Bryan M. Meredith, Memphis, Tennessee, for the appellant, Anthony Holder, Individually and as next of kin of Decardis Holder, deceased.

Jean E. Markowitz and David E. McKinney, Memphis, Tennessee, for the appellee, Shelby County, Tennessee.


**OPINION**


This case involves a complaint for damages filed by Plaintiff/Appellant Anthony

Holder ("Appellant") against Defendant/Appellee Shelby County, Tennessee ("Shelby County") for the wrongful death of Mr. Holder's son, Decardis Holder ("Mr. Holder"). Because this case results from the trial court's grant of a motion to dismiss, we take the facts from the Appellant's amended complaint.

Mr. Holder was involved in an automobile accident on April 20, 2013. The Memphis Police Department ("MPD") responded to the scene and Mr. Holder was subsequently arrested. Mr. Holder was charged with assault, failure to exercise reasonable care, "violation of financial law," leaving the scene of an accident involving injury, disorderly conduct, resisting arrest, and resisting official detention. The MPD transported Mr. Holder to the Shelby County Jail, where he received a mental evaluation performed by agents of Shelby County. The evaluation revealed that Mr. Holder suffered from a mental condition that caused him to be unstable and that he was a threat to himself and others. This evaluation was consistent with Mr. Holder's diagnosis of mental illness, for which he was undergoing treatment at the time of the accident.

Due to the diagnosis, Mr. Holder was placed in a special jail housing unit for unstable inmates, designated the "N" housing unit. Inmates placed in the "N" unit are classified as mentally unstable. Shelby County policy dictates that guards perform a mandatory safety check of the inmates of the "N" unit at least every thirty minutes. On April 21, 2013, Deputy Melvin Moore was assigned to Mr. Holder's unit between 2:00 p.m. and 10:00 p.m. At 9:16 p.m., Deputy Moore indicated that he checked the inmates and that they were all resting peacefully. Deputy Moore later admitted, however, that he did not make the safety check as documented in the log book and that he, in fact, could not recall the last time he observed Mr. Holder living, breathing, or moving about. Indeed, Deputy Moore admitted that he failed to complete even one entire mandated safety check during his eight hour shift on April 21, 2013. Had proper safety checks been performed, nothing would have obstructed Deputy Moore's view of Mr. Holder's cell. When later questioned about his failure to complete the mandatory safety checks, Deputy Moore stated that he could not recall the reason he failed to complete the safety checks; however, Moore publicly stated that "due to my negligence, a guy lost his life."

After a shift change, Deputy Lorna Morris was assigned to Mr. Holder's unit. At 10:14 p.m., Deputy Morris discovered Mr. Holder hanging from a sheet in his cell. Deputy Morris obtained assistance to remove the sheet from Mr. Holder's neck, and perform CPR. Mr. Holder was warm and had a pulse, but was not breathing. Another Deputy that was present observed drool from Mr. Holder's mouth; the Deputy described the drool as having been there for "a while." Mr. Holder was transported to Methodist Hospital-Central, where he eventually died from injuries related to asphyxiation.

2

## Procedural History

On April 18, 2014, Appellant filed a complaint for damages, individually, and on behalf of his son, against Shelby County, alleging that Mr. Holder's death was the result of Deputy Moore's negligence and that Shelby County was vicariously liable. Shelby County filed a motion to dismiss for failure to state a claim for relief on May 27, 2014, arguing that Tennessee Governmental Tort Liability Act ("GTLA") immunity was not removed because Deputy Moore was not acting within the scope of his employment. Appellant filed a response alleging that the negligence at issue was committed in the scope of Deputy Moore's employment. Shelby County later filed a supplement to its motion to dismiss, arguing that the complaint alleged only intentional acts of wrongdoing, for which Shelby County was immune. Appellant filed an amended complaint on August 7, 2014, which specifically stated that Mr. Holder's injuries were caused by the negligent acts of Shelby County employees within the scope of their employment. On August 18, 2014, the trial court entered an order dismissing the case, finding that the amended complaint failed to set forth any negligent acts of Shelby County, and that Deputy Moore was not "on or about Shelby County's business at the time of his acts" because he was not hired to falsify logs. Appellant filed a timely notice of appeal.

## Issues Presented

In this appeal, Appellant raises two issues, which are taken, and slightly restated, from his appellate brief:

1.  Whether the trial court erred in ruling that the plaintiff failed to allege negligent acts of Shelby County in the amended complaint, and only alleged intentional acts.
2.  Whether the trial court erred in ruling that Deputy Moore was not acting within the scope of his employment.

## Standard of Review

The Tennessee Supreme Court recently outlined the standard of review where a party defending an action files a motion to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted:

> A Rule 12.02(6) [of the Tennessee Rules of Civil

3

Procedure][1] motion challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. ***Highwoods Props., Inc. v. City of Memphis***, 297 S.W.3d 695, 700 (Tenn. 2009); ***Willis v. Tenn. Dep't of Corr.***, 113 S.W.3d 706, 710 (Tenn. 2003); ***Bell ex rel. Snyder v. Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A.***, 986 S.W.2d 550, 554 (Tenn. 1999); ***Sanders v. Vinson***, 558 S.W.2d 838, 840 (Tenn. 1977). The resolution of a 12.02(6) motion to dismiss is determined by an examination of the pleadings alone. ***Leggett v. Duke Energy Corp.***, 308 S.W.3d 843, 851 (Tenn. 2010); ***Trau-Med of Am., Inc. v. Allstate Ins. Co.***, 71 S.W.3d 691, 696 (Tenn. 2002); C***ook ex rel. Uithoven v. Spinnaker's of Rivergate, Inc.***, 878 S.W.2d 934, 938 (Tenn. 1994); ***Cornpropst v. Sloan***, 528 S.W.2d 188, 190 (Tenn. 1975) (overruled on other grounds by ***McClung v. Delta Square Ltd. P'ship***, 937 S.W.2d 891, 899–900 (Tenn. 1996)). A defendant who files a motion to dismiss "'admits the truth of all of the relevant and material allegations contained in the complaint, but . . . asserts that the allegations fail to establish a cause of action.'" ***Brown v. Tenn. Title Loans, Inc.***, 328 S.W.3d 850, 854 (Tenn. 2010) (quoting ***Freeman Indus., LLC v. Eastman Chem. Co.***, 172 S.W.3d 512, 516 (Tenn. 2005)); *see* ***Edwards v. Allen***, 216 S.W.3d 278, 284 (Tenn. 2007); ***White v. Revco Disc. Drug Ctrs***., Inc., 33 S.W.3d 713, 718 (Tenn. 2000); ***Holloway v. Putnam Cnty.***, 534 S.W.2d 292, 296 (Tenn. 1976).

In considering a motion to dismiss, courts "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" ***Tigg v. Pirelli Tire Corp.***, 232 S.W.3d 28, 31–32 (Tenn. 2007) (quoting ***Trau–Med***, 71 S.W.3d at 696); *see* ***Leach v. Taylor***, 124 S.W.3d 87, 92–93 (Tenn. 2004); ***Stein v. Davidson Hotel Co.***, 945 S.W.2d 714, 716 (Tenn. 1997); ***Bellar v. Baptist Hosp., Inc.***, 559 S.W.2d 788, 790 (Tenn. 1978); *see also* ***City of Brentwood v. Metro. Bd. of Zoning Appeals***, 149 S.W.3d 49, 54 (Tenn. Ct. App. 2004) (holding that courts "must construe the complaint liberally in favor of the

---

[1] Rule 12.02(6) provides that defendant may seek to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted."

4

plaintiff by . . . giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts"). A trial court should grant a motion to dismiss "only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002); *see Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007); *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Pemberton v. Am. Distilled Spirits Co.*, 664 S.W.2d 690, 691 (Tenn. 1984); *Fuerst v. Methodist Hosp. S.*, 566 S.W.2d 847, 848 (Tenn. 1978); *Ladd v. Roane Hosiery, Inc.*, 556 S.W.2d 758, 759–60 (Tenn. 1977). We review the trial court's legal conclusions regarding the adequacy of the complaint de novo. *Brown*, 328 S.W.3d at 855; *Stein*, 945 S.W.2d at 716.

*Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011).

**Analysis**

**A.**

Appellant first argues that the trial court erred in concluding that his complaint alleged only intentional acts committed by Deputy Moore, for which Shelby County is immune under the GTLA. This case involves a tort action brought against a governmental entity, and therefore, it is governed by the GTLA. *See* Tenn. Code Ann. § 29-20-101 *et seq*. A governmental entity is generally immune "from suits arising out of the exercise and discharge of a State entity's functions," *Whitmore v. Shelby County Gov't*, No. W2010-01890-COA-R3-CV, 2011 WL 3558285, at *3 (Tenn. Ct. App. Aug. 15, 2011), and the GTLA, which reaffirms the doctrine of sovereign immunity, waives this immunity only "'in limited and enumerated instances for certain injuries[.]'" *See Lynn v. City of Jackson*, 63 S.W.3d 322, 337 (Tenn. 2001) (citing Tenn. Code Ann. § 29-20-201(a); *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997)). Relevant to this case, the GTLA provides:

Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:

&#42; &#42; &#42;

(6) Misrepresentation by an employee whether or not such is

5

negligent or intentional; . . . .

Tenn. Code Ann. § 29-20-205. Furthermore, the Tennessee Supreme Court has held that "'the GTLA does not allow plaintiffs to hold governmental entities vicariously liable for intentional torts not exempted under section 29-20-205(2), but rather requires a direct showing [of] negligence on the part of the governmental entity.'"[2] ***Hughes v. Metropolitan Government of Nashville and Davidson County***, 340 S.W.3d 352, 368 (Tenn. 2011) (quoting ***Pendleton v. Metro. Gov't of Nashville & Davidson Cnty.***, No. M2004-01910-COA-R3-CV, 2005 WL 2138240, at *3 (Tenn. Ct. App. Sept. 1, 2005) (citing ***Limbaugh v. Coffee Med. Ctr.***, 59 S.W.3d 73, 84 (Tenn. 2001))).

As previously discussed, Shelby County argued in the trial court that because all of Deputy Moore's alleged actions were intentional, immunity was not removed and Appellant's amended complaint should be dismissed. Appellant argues that his amended complaint clearly contemplates that Deputy Moore's actions constituted negligence. Accordingly, a review of the relevant allegations in Appellant's amended complaint is helpful.

According to the amended complaint:

> 19. At all times relevant hereto, [Mr.] Holder was classified as unstable.
> 20. At all times relevant hereto, [Mr.] Holder was classified as a threat to himself and/or others.
> 21. At all times relevant hereto, the Shelby County Sheriff[']s Office policies and procedures required that corrections officers assigned to the "N" housing unit in the Shelby County Jail perform a safety check on each inmate housed in the "N" housing unit at least every thirty (30) minutes.
>
> * * *
>
> 23. At 9:16 p.m. on the April 21, 2013 and near the end of his shift, Deputy Moore documented in the jail's log book that he had completed a security round cell to cell check at 9:16 p.m. and that wrote "Inmates was resting on their bunks and standing at their doors."

---

[2] There is no allegation in the complaint that Shelby County committed negligence directly.

6

24. Deputy Moore has admitted . . . that he did not make the security round as documented in the log book and that he could not recall when the last time he observed [Mr. Holder] living, breathing, or moving about.

25. Deputy Moore has admitted that he did not complete a final security round in the housing unit and that, on April 21, 2013, he never made a complete security round in "N" housing unit during his eight (8) hour shift.

26. Deputy Moore has admitted that he was unable to recall the reason he failed to conduct the security rounds; however, [Deputy] Moore has publicly stated that "due to my negligence, a guy lost his life."

27. Deputy Moore's failure to carry out safety checks in the "N" housing unit on April 21, 2013 every thirty (30) minutes violated the pre-existing policies and regulations of [Shelby County].

28. At all times relevant hereto, Corrections Deputy Melvin Moore was an employee of [] Shelby County.

The amended complaint further states that Deputy Moore's inaction constituted negligence, which was the legal and proximate cause of Mr. Holder's death.

Clearly, Appellant generally characterizes Deputy Moore's inaction in this case as negligence. Shelby County argues that regardless of how these actions or inactions are characterized in Appellant's amended complaint, the acts alleged are all intentional acts. Specifically, Shelby County points to the allegation regarding Deputy Moore's alleged falsification of the log book, which it argues falls squarely within Tennessee Code Annotated Section 29-20-205(6) regarding intentional or negligent misrepresentations. *See* Tenn. Code Ann. § 29-20-205(6) (indicating that immunity is not removed when injury results from "[m]isrepresentation by an employee whether or not such is negligent or intentional"). In his reply brief, Appellant appears to concede that this allegation may involve a negligent or intentional misrepresentation as contemplated under Tennessee Code Annotated Section 29-20-205(6). Appellant argues, however, that this allegation is irrelevant as Deputy Moore's falsification of the log book is not alleged to have been the legal or proximate cause of Mr. Holder's death; instead, Appellant contends that Mr. Holder's death was caused by Deputy Moore's failure to make the required checks, regardless of whether the log book was falsified. Given Appellant's apparent concession that the falsification of the log books constituted a negligent or intentional misrepresentation pursuant to Tennessee Code Annotated Section 29-20-205(6), we agree with Shelby County that immunity was not removed for this action.

7

Our conclusion regarding the falsification of the log books, however, does not end the inquiry. With regard to the remaining allegations, we must conclude that Appellant's amended complaint, taken as true, and viewed in the light most favorable to Appellant, alleges negligent acts or omissions on the part of Deputy Moore. As previously discussed, the amended complaint alleges that Deputy Moore failed to make the required security checks. The amended complaint further indicates that Deputy Moore could not articulate the reason for his failure to make the required checks, but that he later characterized his inaction as "negligence." The amended complaint also makes clear that this inaction on the part of Deputy Moore was the legal and proximate cause of Mr. Holder's death.

The Tennessee Supreme Court was faced with a somewhat similar situation in ***Hughes v. Metropolitan Government of Nashville and Davidson County***. In ***Hughes***, the issue concerned whether immunity was removed with regard to injuries resulting from the operation of public works equipment by a government employee. ***Hughes***, 340 S.W.3d 352, 368–69 (Tenn. 2011). At the conclusion of a bench trial, the trial court ruled that although the employee "intended to drive the vehicle in a negligent or careless manner," the employee merely committed negligence. Thus, the trial court ruled that immunity was removed. ***Id.*** at 367–68.

On appeal, the Tennessee Supreme Court was tasked with determining whether the injuries resulted from the employee's negligence, for which immunity was removed, or assault, for which immunity was not removed. ***Id.*** at 369. In determining that the employee committed the intentional tort of assault, the Court focused on the intent required to prove the tort of assault. The Court concluded that to commit the intentional tort of assault, the tortfeasor must intend "to create an apprehension of harm." ***Id.*** at 371. The trial court specifically found that the employee in ***Hughes*** intended to frighten the plaintiff, which finding was supported by the testimony of witnesses. Thus, the Court held that the intention element of the tort of assault had been met. ***Id.*** at 371–72. Accordingly, the Court concluded that the employee committed an intentional tort, for which immunity was not removed. ***Id.***

The facts and procedure in ***Hughes*** are simply not analogous to this case. First, we note that the Tennessee Supreme Court determined that an intentional tort had been committed only after a trial on the merits. In addition, the Court specifically relied upon factual findings made by the trial court. In this case, however, Shelby County seeks to dismiss this case simply based upon Appellant's amended complaint. As previously discussed, however, Appellant's amended complaint characterizes Deputy Moore's inaction as negligence. Thus, while the Court in ***Hughes*** had the benefit of evidence, testimony, and fact-finding by the trial court, this Court must determine the issue solely under the liberal

8

standard for determining a motion to dismiss. A motion to dismiss, however, is particularly ill-suited for determining these types of factual issues:

> [I]t must be remembered that we are addressing the standard in assessing the sufficiency of a single document filed at the very beginning of a case—the complaint. Our motion-to-dismiss jurisprudence reflects the principle that this stage of the proceedings is particularly ill-suited for an evaluation of the likelihood of success on the merits or of the weight of the facts pleaded, or as a docket-clearing mechanism.

***Webb v. Nashville Area Habitat for Humanity, Inc.***, 346 S.W.3d 422, 437 (Tenn. 2011).

Further, having thoroughly reviewed the allegations in the amended complaint, we note that nothing in the complaint indicates Deputy Moore's state of mind at the time of the inaction at issue in this case. As discussed above, the employee's intent was the dispositive issue in determining whether negligence or an intentional tort was committed in ***Hughes***. ***Id.*** at 371; *see also* ***King v. Ross Coal Co.***, 684 S.W.2d 617, 620 (Tenn. App. 1984) ("[I]t takes more than a mere inference of tortious intent to convert the defendant's negligence into an intentional tort."). Neither party cites any law regarding the distinguishing factors between negligent acts or omissions and intentional conduct. As explained in *American Jurisprudence*:

> The distinguishing factor between intentional tortious conduct and negligent conduct is that the intentional actor has the desire to bring about the consequences that follow or the substantial certainty that they will occur, while a negligent actor does not desire to bring about the consequences which follow, nor does he or she know that they are substantially certain to occur, or believe that they will; there is merely a risk of such consequences, sufficiently great to lead a reasonable person in his or her position to anticipate them, and to guard against them. Thus, the principal difference between negligent and intentional conduct is a difference in the probability, under the circumstances known to the actor and according to common experience, that certain consequence or a class of consequences will follow from a certain act.

57A Am. Jur. 2d Negligence § 30. Here, the amended complaint indicates that Deputy Moore

could not recall the reason he had not made the required security checks; a favorable reading of this allegation could indicate that Deputy Moore's inaction was the result of being overly burdened by other tasks during his shift or any other number of facts that would indicate that Deputy Moore's inaction was negligent rather than intentional. In fact, Deputy Moore later characterized his inaction as negligence. Nothing in the amended complaint indicates that Deputy Moore had the desire to bring about Mr. Holder's death, or that he was "substantial[ly] certain" that such would occur. *See id.* Accordingly, there is simply no allegation contained in the amended complaint from which this Court could conclude that Deputy Moore had the requisite intent to convert the allegation of negligence into an intentional tort.

Finally, while in *Hughes*, the defendant governmental entity argued in the trial court and on appeal that rather than negligence, that employee committed the specific tort of assault. *Id.* at 369. A thorough review of both the trial record and Shelby County's appellate brief reveals that Shelby County never alleged that Deputy Moore committed a specific intentional tort other than with regard to the allegation of falsification of the log book, discussed *supra*. Indeed, other than the specific allegation in Appellants' complaint regarding the falsification of the log book, neither Shelby County's motion to dismiss, memorandum in support of its motion to dismiss, nor appellate brief offer any legal authority for its contention that the remaining actions or inactions alleged in the amended complaint were intentional rather than negligent. Instead, this assertion is merely conclusory. Under these circumstances, we conclude that Appellant's amended complaint sufficiently alleges acts of negligence on the part of Deputy Moore to survive Shelby County's motion to dismiss.

## B.

Appellant next argues that the trial court erred in finding that Deputy Moore was not acting within the scope of his employment in failing to make the required security checks. Tennessee Code Annotated Section 29-20-205 makes clear that immunity is only removed for those negligent acts or omissions that are committed "within the scope of [the tortfeasor employee's] employment." As such, Deputy Moore's failure to perform the mandated security checks must have been within the scope of his employment.

Whether an employee is acting within the scope of his or her employment is a question of fact. *Hughes v. Metro. Gov't of Nashville and Davidson Cnty.*, 340 S.W.3d 352, 361 (Tenn. 2011) (citing *Home Stores, Inc. v. Parker*, 179 Tenn. 372, 166 S.W.2d 619, 622 (1942); *Tenn. Farmers Mut. Ins. Co. v. Am. Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 937 (Tenn. Ct. App. 1992) (observing that the determination as to whether an act occurred within the scope of employment "requires the weighing and balancing of the facts and

circumstances of each case")); *Restatement (Second) of Agency* § 229 cmt. a (1958) ("The limits of the scope of employment are dependent upon the facts of the particular case[.]"). Due to the fact-intensive nature of this inquiry, the Tennessee Supreme Court has adopted a multi-factor test for determining whether an employee acted within the scope of his or her employment for purposes of GTLA immunity. *See **Hughes***, 340 S.W.3d at 363–65. According to the Tennessee Supreme Court, courts considering this issue should consider the following test from the Restatement (Second) of Agency:

> (1) Conduct of the servant is within the scope of employment if, but only if:
>
> > (a) it is of the kind he is employed to perform;
> > (b) it occurs substantially within the authorized time and space limits;
> > (c) it is actuated, at least in part, by a purpose to serve the master; and
> > (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
>
> (2) Conduct of the servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time and space limits, or too little actuated by a purpose to serve the master.

***Hughes***, 340 S.W.3d at 363–64 (citing *Restatement (Second) of Agency* § 228). In addition, the Court concluded that the following factors provided an "instructive framework for an analysis that is ultimately 'dependent upon the facts of the particular case.'" ***Hughes***, 340 S.W.3d at 365 (quoting *Restatement (Second) of Agency* § 229 cmt. A):

> (2) In determining whether or not the conduct although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, the following matters of fact are to be considered:
>
> > (a) whether or not the act is one commonly done by such servants;
> > (b) the time, place and purpose of the act;
> > (c) the previous relations between the master and the servant;

(d) the extent to which the business of the master is apportioned between different servants;
(e) whether or not the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant;
(f) whether or not the master has reason to expect such an act will be done;
(g) the similarity in quality of the act done to the act authorized;
(h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant;
(i) the extent of departure from the normal method of accomplishing an authorized result; and
(j) whether or not the act is seriously criminal.

*Hughes*, 340 S.W.3d at 365 (quoting *Restatement (Second) of Agency* § 229(2)).

Based on the foregoing, it is clear that the Tennessee Supreme Court contemplated that the issue of whether an employee acted outside the scope of his or her employment constitutes a fact-intensive inquiry. *See Hughes*, 340 S.W.3d at 366 (describing the inquiry as not being based upon a "bright-line rule," but instead as being determined by consideration of several "fact-intensive" factors). As such, the factors listed above involve factual inquiries that cannot be determined "by an examination of the pleadings alone." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011) (citing *Leggett v. Duke Energy Corp.*, 308 S.W.3d 843, 851 (Tenn. 2010)). Indeed, *Hughes* was not decided at the motion to dismiss stage of litigation, but instead was determined after a trial on the merits. *Hughes*, 340 S.W.3d at 364.

Furthermore, as previously discussed, in the motion to dismiss stage, we must take all factual allegations in the complaint as true. *Webb*, 346 S.W.3d at 426 (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31–32 (Tenn. 2007)). The question of whether an employee was acting within the scope of his or her employment is a question of fact. *Hughes*, 340 S.W.3d at 361. Appellant's amended complaint contains the following relevant allegation: "The negligence of Deputy Moore set forth herein was committed by Deputy Moore within the course and scope of his employment." Because this is a factual allegation, we must take it as true for purposes of Shelby County's motion to dismiss. Thus, Appellant's amended complaint clearly alleges that Deputy Moore's negligence was committed within the scope of his employment. Accordingly, the trial court erred in dismissing Appellant's amended complaint on the basis that Deputy Moore's actions were taken outside the scope of his

12

employment.

## Conclusion

The judgment of the Circuit Court of Shelby County is reversed and this matter is remanded to the trial court for further proceedings consistent with this Opinion. Costs of this appeal are taxed to Appellee, Shelby County, for which execution may issue, if necessary.

_____
J. STEVEN STAFFORD, JUDGE